MUNSERT, Special Administrator, Appellant, vs. FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

*September 14, 1938—January 10, 1939.*

582

For the appellant there were briefs by *Lehner & Lehner* and *Adolph P. Lehner,* all of Oconto Falls, and oral argument by *Philip Lehner.*

For the respondent there were briefs by *Wallrich & Aschenbrener* of Shawano, attorneys, and *Sanborn, Blake & Aberg* and *Edwin Conrad,* all of Madison, of counsel, and oral argument by *Mr. E. J. Aschenbrener* and *Mr. Conrad.*

The following opinion was filed October 11, 1938:

FOWLER, J. Appellant's counsel conceive the question presented by the appeal to be whether the special administrator of the estate of an unemancipated minor killed by the wrongful act of his unemancipated minor brother can recover damages under the death-by-wrongful-act statute when the deceased is instantly killed and the parents of the deceased are the beneficiaries under the act.

Certain propositions are conceded by counsel for both parties, and we will spend no time in elucidating them. They are, that where one is instantaneously killed by wrongful act

no cause of action lies against the wrongdoer by the administrator of his estate; that the parents here would be entitled to the recovery if one were allowed in the action for death by wrongful act; and that where there is no action in favor of the estate, the action for death by wrongful act may be brought directly by the beneficiaries under the act unless the beneficiaries by reason of the family relation existing between them and the wrongdoer are barred from bringing suit.

The issue as conceived by the appellant may, we think, be best considered by disposing of the propositions urged by the respondent toward controverting it. These propositions are, (1) that parents cannot bring an action against their unemancipated minor child; (2) that the parents in this case are by that rule prevented from themselves bringing an action against Emanuel under the death-by-wrongful-act statute; and (3) that as such an action cannot be brought by the parents directly it cannot be brought indirectly by the special administrator and the rule (1) thereby be obviated and rendered inoperative.

Two grounds are urged by the respondent in support of rule (1). One is that the rule follows from the decision in *Wick v. Wick,* 192 Wis. 260, 212 N. W. 787, which held that a minor living in the home of his father may not sue his father. The other is that the adjudicated cases so hold on grounds other than the grounds on which the rule of the *Wick Case* rests. In the view we take of the case there is no need to consider either of these grounds because, however it may be in other tort actions, the rules contended for do not apply to actions under the death-by-wrongful-act statute, which is what the instant action is.

The reason that moves us to hold that the rule of the *Wick Case* does not apply to actions in tort by parents against their

unemancipated minor children living in their home, is the same that impelled the court in *Wait v. Pierce,* 191 Wis. 202, 209 N. W. 475, 210 N. W. 822, not to apply the rule later laid down in the *Wick Case,* wherein the court held that a wife could sue her husband in tort. The reasons that such a suit would tend to create family discord apply as strongly in suits between husband and wife as between father and son. That tendency is recognized in the opinion in the *Wait Case,* page 216. But notwithstanding the existence of the tendency and the undisputed common-law rule that a wife could not sue her husband in tort, the court held that a wife could sue her husband in tort because statutes of the state so provide. The statutes construed as so providing are the various married-women's acts referred to in the opinion of the *Wait Case*. None of the married-women's acts expressly declare that a wife may sue her husband, but it was held that they so provide by implication. The implication that parents may sue their minor children under the death-by-wrongful-act statute is even more clear than that married-women's acts provide that the wife may sue her husband. However it may be as to other actions in tort, we hold that under the death-by-wrongful-act statute the instant action which is under that statute might have been maintained by the parents directly. Consideration of the language of the statute and its correlative statute brings us to that view.

The death-by-wrongful-act statute, sec. 331.03, provides that under the conditions stated therein, which exist here, the person who would have been liable if death had not ensued "shall be liable to an action for damages." Sec. 331.04, Stats., provides that under the facts here existing the recovery in such action "shall be paid over to" the parents; and it provides further that "if there be no cause of action in favor of the estate of such decedent and the person or per-

sons to whom the whole amount sued for and recovered belongs, . . . shall be the . . . parents, . . . suit may at . . . their option be brought directly in . . . their . . . names instead of being brought in the name of the personal representative of such deceased person." This leads us to the conclusion next above stated.

It is true that sec. 331.03, Stats., limits the action to cases where the deceased had he lived would have had an action against the wrongdoer, and our conclusion above stated rests upon the inference that an action by a minor brother injured but not killed by wrongful act of his unemancipated minor brother living with the injured brother in the home of the minor's parents, may be brought against the brother who committed the wrong. We have not yet in any case decided that such action lies. But we came close to so deciding in *Beilke v. Knaack,* 207 Wis. 490, 242 N. W. 176. We there held that a minor may sue in tort his adult brother slightly over twenty-one years of age living with him in the family of his parents. If he may sue such brother if slightly over twenty-one years of age living with him in his father's family, it is no great stretch from that to hold that he may sue a brother so living slightly under that age; and if so, John, had he lived, might have brought an action against Emanuel. It is said in the *Beilke Case, supra,* pp. 493, 494:

"We are not disposed to extend the rule of the *Wick Case* and hold that a brother may not sue a brother for a tort even though both resided in the same home. No authority supporting defendant's contention that a brother may not sue a brother for a tort when both are members of the same family and reside in the same home has been called to our attention and we have not been able to find any. We perceive no sound reason for holding that a brother should not be liable to a brother for a tort committed upon him."

This statement applies to the instant case.

The respondent contends that although the action for death by wrongful act lies in behalf of parents of a deceased child,

the clause of the indemnity policy in suit excepting "obligation to the assured" excludes the father from recovering. This clause is "This agreement shall exclude any obligation of the company: . . . (d) Under coverage A, for such bodily injury: (1) . . .; (2) 'to the assured;' . . . (e) Under coverage B, for property of the assured. . . ." The insuring agreement was: "This company agrees to pay . . . all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damage because of: Coverage A—Bodily injury including death at any time resulting therefrom . . . accidentally sustained by any person . . . and caused by the . . . use of the automobile. Coverage B—Accidental damage to . . . property . . . caused by . . . use of the automobile." Thus obligation to the father resulting from the killing of John by the use of the automobile and obligation to him for injury to the automobile so resulting are excluded. As right of recovery depended upon coverage, there can be no recovery where coverage is excluded. The plaintiff urges that the extended coverage clause required to be inserted in every automobile indemnity policy by sec. 204.30 (3), Stats., and the provision in secs. 204.33 (2) and 204.34 (2) that no such policy shall exclude from coverage "persons related by blood or marriage to the assured," operate to relieve the father from exception from coverage. But the effect of these sections is declared in *Segall v. Ohio Casualty Co.* 224 Wis. 379, 386, 272 N. W. 665. It is there held that the application of these statutes is limited to the person driving the car; they "plainly refer to the coverage of the driver of the car." They do not render nugatory or inoperative the exception in the policy excluding from coverage cases where use of the car imposes on the driver obligation to the assured.

Plaintiff also contends that the decision in *Archer v. General Casualty Co.* 219 Wis. 100, 261 N. W. 9, 262 N. W. 257, wherein a wife who was joint owner of the car with her

husband, and the indemnity policy ran to them jointly, could recover from the insurer for injuries to her received in a collision while riding in the car as a guest when caused by the negligence of her husband in driving. But there was no clause in the policy excluding her from recovery. It is plainly intimated in the closing paragraph of the opinion that had there been a clause in the policy excluding from coverage cases where obligation to the assured existed, the wife would not have been entitled to recover against the insurer.

The father being prevented from recovery by the exclusion clause of the policy, the recovery allowable goes to the mother. The interest of the parents in the recovery where father and mother both recover is equal, and one half of the compensation allowed by the verdict belongs to the mother. The mother is therefore entitled to recovery of one half of the amount assessed. However, the amount allowed for injury to the car would inure to the father as he owned it. So of the funeral expenses for which the father alone is liable. The mother cannot recover these items of damage included in the verdict. Her recovery is limited to one half the "pecuniary loss" resulting from the death of the child, and one half of the compensation allowed for "loss of society and companionship." These allowances aggregate $2,800. The recovery will therefore be for one half of that sum.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded with directions to enter judgment in favor of the mother of the deceased in the sum of $1,400 and costs.

A motion for a rehearing was denied, with $25 costs, on January 10, 1939.