Mary LICKTEIG, Plaintiff/Appellant,

v.

Robert KOLAR, Jr.,
Defendant/Appellee.

No. A09–1728.

Supreme Court of Minnesota.

May 27, 2010.

Richard D. Casey, Ryland L. Deinert, Dana Van Beek Palmer, Lynn, Jackson, Shultz & Lebrun, P.C., Sioux Falls, SD, for appellant.

John E. Mack, Mack & Daby, P.A., New London, MN, for appellee.

## OPINION

MAGNUSON, Chief Justice.

Appellant Mary Lickteig sued her brother, appellee Robert Kolar, Jr., in the United States District Court for the District of Minnesota for sexual abuse and battery allegedly committed during their childhood, between approximately 1974 and 1977. The district court dismissed the case sua sponte, concluding that Lickteig did not state a cause of action, and Lickteig appealed. The Eighth Circuit Court of Appeals certified three questions to this court: (1) whether Minnesota law recognizes a cause of action by one sibling against another sibling for "sexual abuse" that allegedly occurred when they were both minor children; and, if so, what are the elements of that cause of action; (2) whether intrafamilial immunity applies between siblings for a sexual abuse tort or battery tort committed when both were unemancipated minors living in the same household, where the lawsuit is not brought until both are emancipated adults living in separate households; and (3) whether the statute of limitations, Minn. Stat. § 541.073 (2008), applies retroactively to Lickteig's action, where she was allegedly sexually abused as a minor between 1974 and 1977, but, because of repressed memories, she alleged that she did not remember the abuse until 2005. We accepted the questions as certified, and we now answer the first two questions in the negative and the third question in the affirmative.

Lickteig and Kolar are biological siblings who grew up in Walnut Grove, Minnesota. Lickteig alleged that Kolar sexually abused her for several years, starting in 1974 and ending in 1977. Lickteig also alleged that Kolar sexually abused, raped, and assaulted her older sisters while she was in the same room. Kolar admitted that he sexually abused two of his sisters, but denied Lickteig's allegations against him. Lickteig alleged that because of mental and emotional distress, she had repressed her memory of these events. She asserted that she began to see a therapist in August 2005 because of nightmares, as memories of Kolar's sexual abuse began to resurface.

Lickteig sued Kolar in 2007 in federal district court. The court had subject matter jurisdiction in the case based on the diversity of citizenship statute, 28 U.S.C. § 1332 (2006). Lickteig is a South Dakota resident and Kolar is an Iowa resident. Lickteig alleged one count of sexual abuse and one count of battery. Kolar denied

Lickteig's allegations and asserted counterclaims for abuse of process and defamation. Lickteig filed a motion to amend her complaint to add a claim for punitive damages, which Kolar opposed on the ground that the statute of limitations barred Lickteig's claims against him. The district court granted the motion to amend, concluding that Lickteig's action was not time-barred under Minn.Stat. § 541.073. Upon Lickteig's motion for summary judgment on Kolar's counterclaims, the district court granted the motion to dismiss Kolar's abuse-of-process claim, but denied the motion as to Kolar's defamation claim.

After reviewing briefs by the parties on the issue of whether Lickteig asserted a cognizable action, the district court dismissed the case sua sponte. The court concluded that Lickteig did not state a cause of action after determining that: (1) Minnesota does not recognize a cause of action for sexual abuse between unemancipated siblings, and (2) the doctrine of intrafamilial immunity barred the action.

The district court denied Lickteig's requests to file a motion to reconsider and to certify the issues to this court. Lickteig appealed to the United States Court of Appeals for the Eighth Circuit, and the Eighth Circuit certified to this court the three questions [1] before us. We accepted the certified questions without modification.

■ We review certified questions de novo. *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 754 N.W.2d 544, 550 (Minn.2008). We may answer a question of law certified by a federal court "if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this state." Minn.Stat. § 480.065, subd. 3 (2008).

The certified questions before us involve consideration of Minn.Stat. § 541.073, the statute of limitations for claims based on sexual abuse. Subdivision 1 of the statute defines "sexual abuse" as "conduct described in sections 609.342 to 609.345." Minn.Stat. § 541.073, subd. 1. Minnesota Statutes sections 609.342 to 609.345 (2008) are the criminal sexual conduct provisions of the criminal code that define criminal sexual conduct in the first to fourth degrees.[2]

Minnesota Statutes § 541.073, subdivision 2, details the limitations period, and provides:

(a) An action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

(b) The plaintiff need not establish which act in a continuous series of sexual abuse acts by the defendant caused the injury.

(c) The knowledge of a parent or guardian may not be imputed to a minor.

(d) This section does not affect the suspension of the statute of limitations during a period of disability under section 541.15.

---

1. Kolar did not appeal the district court's order concluding that Lickteig's action was not time-barred under Minn.Stat. § 541.073. However, he raised the issue again before the Eighth Circuit, and the Eighth Circuit in turn included that issue in its certification.

2. Sections 609.342 to 609.345 describe a variety of unlawful sexual conduct, the severity of which is determined based on multiple factors, including the ages of the victim and perpetrator, the relationship, if any, between the victim and the perpetrator, whether force is threatened or used, whether bodily harm, great bodily harm, personal injury, pregnancy or severe mental anguish result, and many other specific factors.

Subdivision 3 provides, "[t]his section applies to an action for damages commenced against a person who caused the plaintiff's personal injury either by (1) committing sexual abuse against the plaintiff, or (2) negligently permitting sexual abuse against the plaintiff to occur."

This statute, known as the "delayed discovery statute," *D.M.S. v. Barber*, 645 N.W.2d 383, 387 (Minn.2002), was enacted in 1989. As originally enacted, it provided in part:

> An action for damages based on personal injury caused by sexual abuse must be commenced, in the case of an intentional tort, within two years, or, in the case of an action for negligence, within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse. The plaintiff need not establish which act in a continuous series of sexual abuse acts by the defendant caused the injury. The knowledge of a parent or guardian may not be imputed to a minor. This section does not affect the suspension of the statute of limitations during a period of disability under section 541.15.

Act of May 19, 1989, ch. 190, § 2, 1989 Minn. Laws 485, 486 (codified as amended at Minn.Stat. § 541.073, subd. 2). The statute was effective on May 20, 1989, the day following final enactment, and it applied to actions "pending on or commenced on or after that date." *Id.* § 6, 1989 Minn. Laws at 488. The Legislature also enacted an extension of time provision:

> Notwithstanding any other provision of law, a plaintiff whose claim is otherwise time-barred has until August 1, 1990, to commence a cause of action for damages based on personal injury caused by sexual abuse if the plaintiff proves by a preponderance of the evidence that the plaintiff consulted an attorney to investigate a cause of action for damages based on personal injury caused by sexual

abuse within two years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

*Id.* § 7, 1989 Minn. Laws at 488. This provision was not codified in Minnesota Statutes.

In 1991, the Legislature deleted the 2–year statute of limitations for intentional tort claims based on sexual abuse and enacted a 6–year statute of limitations for all claims based on sexual abuse. The statutory language was amended to its current version and provides, "[a]n action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse." Act of May 28, 1991, ch. 232, § 1, 1991 Minn. Laws 629, 629 (codified at Minn.Stat. § 541.073). This change became effective on May 29, 1991, and applied to actions "pending on or commenced on or after that date." *Id.* § 4, 1991 Minn. Laws at 631.

The Legislature again enacted an extension-of-time provision in 1991, *id.* § 5, 1991 Minn. Laws at 631, and then amended that provision in 1992 to read:

> Notwithstanding any other provision of law, a plaintiff whose claim would otherwise be time-barred under Minnesota Statutes 1990 has until August 1, 1992, to commence a cause of action for damages based on personal injury caused by sexual abuse if the action is based on an intentional tort committed against the plaintiff.

Act of Apr. 29, 1992, ch. 571, art. 12, § 2, 1992 Minn. Laws 1983, 2088. Like the prior extension provision, this section of the session laws was not codified in Minnesota Statutes. The 1992 amendment to the extension provision was effective retroactive to August 1, 1991, and applied to

actions "pending on or commenced on or after that date." *Id.* § 3, 1992 Minn. Laws at 2088. The statute has not been amended since 1992.

## I.

■ The first question presented is whether Minnesota law recognizes a separate cause of action for sexual abuse, as opposed to a common-law tort claim based on sexual abuse. No prior decision of this court has expressly recognized a separate cause of action for sexual abuse. The delayed discovery statute does not detail the elements of a statutory cause of action for sexual abuse. But the statute assumes that Minnesota law, at minimum, recognizes some cause of action rooted in sexual abuse, and extends the time period within which plaintiffs can assert those claims. Although Lickteig argues that Minnesota law recognizes a separate cause of action for sexual abuse claims, at oral argument her counsel acknowledged that we need not recognize a cause of action separate from common-law tort in order for her action to continue. Kolar argues that Lickteig's claim does not exist independent of the tort of battery. However, Kolar concedes that Lickteig has a battery claim, but argues that the claim is barred by the doctrine of intrafamilial immunity and the delayed discovery statute.

In *Brett v. Watts*, a case upon which Lickteig relies, the Minnesota Court of Appeals addressed the issue of whether "a civil cause of action exist[s] for violation of the criminal sexual conduct statute." 601 N.W.2d 199, 201 (Minn.App.1999), *rev. denied* (Minn. Nov. 17, 1999). The court held that, "in light of reported cases and legislative references to this cause of action[,]" Minnesota law "recognize[s] a civil cause of action for personal injury based on sexual abuse." *Id.* at 202. The Eighth Circuit interpreted the court of appeals' analysis and reasoning as recognizing a cause of action for sexual abuse separate from common-law battery. However, it is not evident that in recognizing a cause of action for personal injury based on sexual abuse, the court of appeals was suggesting that this cause of action stands independently of common-law tort actions. The court in *Brett* did not discuss the elements of an independent cause of action for sexual abuse. *See id.* The *Brett* court's holding was instead limited to: (1) rejecting a requirement that plaintiffs prove "severe mental anguish" as an element in a tort claim based on sexual abuse, and (2) recognizing that a cause of action can exist based on sexual abuse. *See id.* at 202–03.

■ We do not interpret the delayed discovery statute to have created a separate cause of action for claims based on sexual abuse. Generally, "[a] statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." *Becker v. Mayo Found.,* 737 N.W.2d 200, 207 (Minn.2007) (citing *Larson v. Dunn,* 460 N.W.2d 39, 47 n. 4 (Minn.1990)); *see also Bruegger v. Faribault County Sheriff's Dep't,* 497 N.W.2d 260, 262 (Minn.1993) (concluding that principles of judicial restraint preclude judicial creation of additional causes of action outside those evident in a statute's express or implied terms). Here, the delayed discovery statute neither explicitly nor implicitly creates a cause of action. Indeed, in dismissing Lickteig's cause of action, the district court explained,

> Lickteig's claims for damages ... arise not under Minnesota criminal statutes but solely under the common law ... [and t]he fact that the Minnesota Legislature has enacted a special statute of limitations for common-law claims of this type does not necessarily compel a conclusion that the Legislature has abrogated or altered the common law as to whether a plaintiff may assert causes of

action involving sexual abuse between unemancipated minor siblings.

The statute simply provides additional time for plaintiffs to bring tort claims that involve sexual abuse. Battery[3] or other intentional torts resulting in personal injury are generally subject to a 2–year statute of limitations. *See W.J.L. v. Bugge,* 573 N.W.2d 677, 679–80 (Minn.1998) (citing Minn.Stat. § 541.07 (2008)). Negligence-based claims are generally subject to the 6–year limitation of Minn.Stat. § 541.05, subd. 1(5) (2008), without regard to delayed discovery. *See Dalton v. Dow Chem. Co.,* 280 Minn. 147, 150–51, 158 N.W.2d 580, 583 (1968).

We have never held that a statute of limitations creates a cause of action. Recognizing a separate cause of action under the statute here would be inconsistent with how Minnesota courts have previously analyzed claims of sexual abuse within the scope of various torts, including assault, battery, and negligence claims. In *Brett,* after distinguishing sexual abuse from "ordinary tort[s]," the court of appeals cited two sexual abuse cases in which plaintiffs with battery claims were not required to demonstrate an element of mental harm or suffering in addition to the elements of common-law battery. *Brett,* 601 N.W.2d at 203 (citing *Smith v. Hubbard,* 253 Minn. 215, 225, 91 N.W.2d 756, 764 (1958); *John-son v. Ramsey County,* 424 N.W.2d 800, 804 (Minn.App.1988), *rev. denied* (Minn. Aug. 24, 1998)).[4]

We have not treated claims based on sexual abuse, in the context of either intentional torts or negligence, as independent of a common-law tort. *See, e.g., D.M.S. v. Barber,* 645 N.W.2d 383, 386–87 (Minn. 2002) (classifying the claims asserted based on sexual abuse as negligence claims). In *Blackowiak v. Kemp,* we clarified that the delayed discovery statute is a time limit, and nothing more:

> [W]e view the language as simply a legislative pronouncement that personal injury caused by sexual abuse, as opposed to personal injury caused by any other activity, is entitled to a different limitation period because of its uniqueness and because of the difficulties attendant on the victim's often repressed recollections.

546 N.W.2d 1, 3 (Minn.1996) (internal quotation marks omitted). We further concluded, "concepts of sexual abuse and injury within the meaning of this statute are essentially one and the same, not separable—as a matter of law one is 'injured' if one is sexually abused." *Id.* In so concluding, we characterized sexual abuse as the basis for a cause of action, rather than as an independent cause of action.

---

3. Under Minnesota law, "[b]attery is an intentional, unpermitted offensive contact with another. Its two operative elements are intent and offensive contact." *Johnson v. Morris,* 453 N.W.2d 31, 40 (Minn.1990) (internal citation omitted).

4. The court of appeals has been inconsistent to some extent in its classification of claims based on sexual abuse. *Compare Doe v. F.P.,* 667 N.W.2d 493, 495, 498 (Minn.App.2003) (addressing "claims ... for sexual abuse/sexual exploitation" under the Minnesota criminal sexual conduct statutes, but in the "civil context"), *rev. denied* (Minn. Oct. 21, 2003), and *Park v. Gravett,* 521 N.W.2d 376, 378 (Minn.

App.1994) (characterizing the plaintiff's claims as alleging "sexual abuse/battery"), *with Sarafolean v. Kauffman,* 547 N.W.2d 417 (Minn.App.1996) (alleging both intentional tort claims and negligence claims based on sexual abuse), *rev. denied* (Minn. July 10, 1996), and *M.L. v. Magnuson,* 531 N.W.2d 849 (Minn.App.1995) (addressing negligence and battery claims based on sexual abuse by church pastor), *rev. denied* (Minn. July 20, 1995), and *Roe v. Archdiocese of St. Paul and Minneapolis,* 518 N.W.2d 629, 632–33 (Minn. App.1994) (defining the delayed discovery statute as "appl[ying] a six-year limitations period to both negligence and intentional tort claims"), *rev. denied* (Minn. Aug. 24, 1994).

Similarly, in *W.J.L. v. Bugge*, 573 N.W.2d 677, 678–80 (Minn.1998), we described the plaintiff's claim at issue as "sexual battery" and the Legislature's intent as one "giving sexual abuse victims additional time to recognize the abuse they suffered while placing a limit on when such claims may be brought," not creating a new cause of action for sexual abuse. *See also Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 131 (Minn.1984) (addressing the issue of whether the plaintiffs' medical malpractice claims based on sexual abuse were covered by professional liability or personal catastrophe policies).

Finally, the history of the delayed discovery statute does not support recognition of sexual abuse claims as torts separate from those already existing in common law. The original statute provided,

> [a]n action for damages based on personal injury caused by sexual abuse must be commenced, in the case of an intentional tort, within two years, or in the case of an action for negligence, within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

Act of May 19, 1989, ch. 190, § 2, 1989 Minn. Laws 485, 486. This language was amended in 1991, to create a 6–year statute of limitations for all claims based on sexual abuse—whether sounding in intentional torts or in negligence. Act of May 28, 1991, ch. 232, § 1, 1991 Minn. Laws 629, 629. The initial wording of the statute shows that, rather than creating a cause of action for sexual abuse, the Legislature segregated claims based on sexual abuse into two categories—those based on intentional torts and those based on negligence. The subsequent amendment to the statute did nothing to alter those categories. Likewise, the 1992 statutory amendment provided,

> Notwithstanding any other provision of law, a plaintiff whose claim would otherwise be time-barred under Minnesota Statutes 1990 has until August 1, 1992, to commence a cause of action for damages based on personal injury caused by sexual abuse *if the action is based on an intentional tort* committed against the plaintiff.

Act of Apr. 29, 1992, ch. 571, art. 12, § 2, 1992 Minn. Laws 1983, 2088 (emphasis added). The distinctions between intentional tort claims and negligence claims in the original statute and the 1991 and 1992 amendments demonstrate that the Legislature did nothing more than establish a specific limitation period for tort plaintiffs who suffer sexual abuse.

Because the delayed discovery statute neither creates a cause of action nor impliedly classifies sexual abuse claims apart from general tort claims, we hold that Minnesota law does not recognize a separate cause of action for sexual abuse apart from common-law tort. Lickteig has asserted a single claim—battery. Therefore, we answer the certified question in the negative.

## II.

The second question presented is whether the doctrine of intrafamilial immunity applies to this action between emancipated adult siblings, now living in separate households, where the sexual abuse occurred when both were unemancipated minors living in the same household. As both the district court and Eighth Circuit recognized, no Minnesota appellate court has answered the questions of whether siblings are immune from suits between them or whether the traditional concerns supporting the doctrine apply to claims such as these.

We have addressed the doctrine of intrafamilial immunity in other contexts. We

have found unpersuasive the justifications of avoiding disruption of family peace and the proliferation of litigation, and we have abrogated some categories of intrafamilial immunity. *See, e.g., Anderson v. Stream*, 295 N.W.2d 595, 601 (Minn.1980) (abrogating parental immunity); *Beaudette v. Frana*, 285 Minn. 366, 373, 173 N.W.2d 416, 420 (1969) (abrogating interspousal immunity); *Balts v. Balts*, 273 Minn. 419, 430, 433, 142 N.W.2d 66, 73, 75 (1966) (rejecting immunity for a child in a suit brought by a parent, concluding that "public policy ... requires that the wrong be righted within the family group by suit or settlement"). In *Silesky v. Kelman*, we stated, albeit in dictum, that "[s]uits are permitted among unemancipated siblings even though they remain in the [same] family household[,]" citing a Connecticut Supreme Court case that held that no immunity existed between unemancipated minor siblings for a suit involving negligent operation of an automobile. 281 Minn. 431, 435–36, 161 N.W.2d 631, 634 (1968) (citing *Overlock v. Ruedemann*, 147 Conn. 649, 165 A.2d 335, 338 (1960)), *overruled in part on other grounds by Anderson*, 295 N.W.2d at 601.

The general rule is that the doctrine of intrafamilial immunity does not apply to suits between siblings. The Restatement of Torts, often cited by jurisdictions that have addressed the issue, provides

> [n]one of the justifications that have been advanced in the past for the immunity from tort liability between parent and child ... has been regarded by any court as sufficient to justify extension of the immunity to other relations of kinship.... Thus a brother has no immunity toward his sister.

Restatement (Second) of Torts § 895H cmt. c (1979). Courts that have reached the issue have uniformly rejected extending the doctrine of intrafamilial immunity to actions between unemancipated siblings. *See, e.g., Emery v. Emery*, 45 Cal.2d 421,

289 P.2d 218, 225 (Ca.1955) (sustaining a cause of action by sisters against their brother for injuries sustained while the sisters were guests in their brother's automobile); *Overlock v. Ruedemann*, 165 A.2d at 338 (concluding that no relevant public policy consideration "prevents an unemancipated minor from recovering damages for the negligence of [plaintiff's] unemancipated minor brother or sister"); *Rozell v. Rozell*, 281 N.Y. 106, 22 N.E.2d 254, 256 (1939) (permitting an action by a brother against his sister for injuries sustained by negligent operation of an automobile); *Munsert v. Farmers Mut. Auto. Ins. Co.*, 229 Wis. 581, 281 N.W. 671, 673–74 (1938) (holding that no justification existed for not holding siblings liable for torts, where the siblings resided in the same home).

These courts have generally rejected the policy justifications for immunity between siblings, including the concept of family harmony:

> An uncompensated tort is no more apt to promote or preserve peace in the family than is an action between minor brother and sister to recover damages for that tort. Furthermore, the relationship between brother and sister is not complicated by reciprocal rights and obligations of the kind that characterize the relationships of husband and wife and parent and child and that lend some support to the immunities from tort liability that have been recognized in such cases.

*Emery*, 289 P.2d at 224. In *Midkiff v. Midkiff*, 201 Va. 829, 113 S.E.2d 875, 877 (1960), the Supreme Court of Virginia rejected policy concerns of family peace as a reason to bar a tort action between siblings because, unlike the husband and wife relationship, there is "no historical or fictional background of legal unity or oneness[,]" nor was the concern of parental discipline and support in the parent/child

immunity context present. The Virginia court held that the public policy of family peace does not provide immunity to siblings when they commit torts against each other. *Id.* at 876.

In light of our abrogation of immunity in all other familial contexts, we will not now extend immunity to emancipated siblings where no other court has done so. The concerns underpinning the traditional doctrine of intrafamilial immunity have been rejected in other contexts, and simply do not apply here. Our reasoning in *Silesky* abrogating the doctrine as applied to parents and children [5]—that "neither individually nor collectively do the arguments in support of the immunity rule outweigh the necessity of according the child a remedy for wrongful negligent injury to his person," 281 Minn. at 441, 161 N.W.2d at 637—is even more compelling here. We hold that the doctrine of intrafamilial immunity does not apply between siblings for a battery tort based on sexual abuse committed when both were unemancipated minors. Therefore, we answer the certified question in the negative.

### III.

■ Because we hold that the doctrine of intrafamilial immunity does not bar Lickteig's battery claim, we finally address whether the delayed discovery statute applies retroactively to make Lickteig's action timely. Unless we conclude that the statute is retroactive, Lickteig's action, which allegedly arose in 1974, would be barred by the statute of limitations that applies to common-law personal injury claims. If we apply the statute retroactively, whether Lickteig suffered memory repression, which affects the timing of her knowledge, is a question of fact.[6]

■ Newly enacted laws are not given retroactive effect "unless clearly and manifestly so intended by the legislature." Minn.Stat. § 645.21 (2008). Through a clear expression of legislative intent, the Legislature can enact a new statute of limitations that applies retroactively even to revive previously barred claims. *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn.2002) (citing *Donaldson v. Chase Sec. Corp.*, 216 Minn. 269, 274, 13 N.W.2d 1, 4 (1943)).

In *Gomon*, we confronted a similar question of whether a newly enacted statute of limitations applied retroactively to revive plaintiffs' time-barred medical malpractice claim. In that case, the plaintiffs' cause of action accrued on July 23, 1996, and applying the then existing 2–year statute of limitations, the claim would have been barred on July 23, 1998. 645 N.W.2d at 416. In 1999, a 4–year statute of limitations was enacted, effective on August 1, 1999, which applied "to actions commenced on or after" that date. Act of Mar. 26, 1999, ch. 23, §§ 1–3, 1999 Minn. Laws 128, 128 (codified at Minn.Stat. § 541.076 (2008)); *Gomon*, 645 N.W.2d at 416. We held that by making the new statute of limitations applicable to claims commenced

---

**5.** Our abrogation in *Silesky* was subject to exceptions that we later overruled in *Anderson,* 295 N.W.2d at 601.

**6.** Both parties make arguments relating to Lickteig's memory repression and whether she knew or had reason to know prior to 2005 that the alleged sexual abuse caused her injury. However, this issue is not before us. We address a question of law—whether the delayed discovery statute is retroactive—not a

question of fact relating to the credibility of Lickteig's claim that she repressed memory of the abuse.

We have previously said that the question is "the time at which the alleged sexual abuse victim knew or should have known" that an injury was caused by sexual abuse. *Blackowiak v. Kemp,* 546 N.W.2d 1, 3 (Minn.1996). This is a question of fact to be resolved in the district court. *W.J.L. v. Bugge,* 573 N.W.2d 677, 680 (Minn.1998).

"on or after" the effective date, the Legislature expressed its intent to make the statute of limitations apply retroactively even to claims previously barred. *Gomon,* 645 N.W.2d at 417. We concluded that "no additional expression of legislative intent [was] required" beyond the effective date language. *Id.; cf. Lovgren v. Peoples Elec. Co.,* 380 N.W.2d 791, 795–96 (Minn.1986) (holding that the statute of limitations for personal injury claims arising out of defective or unsafe improvements to real property did not apply retroactively because there was no effective date provision).

■ We hold that the delayed discovery statute applies retroactively. Here, the Legislature could have made the delayed discovery statute applicable to claims arising on or after the effective date, or could have chosen to include no effective date provision. However, the Legislature chose language that specifically evidences an intent to make the delayed discovery statute and its amendments retroactive by making the delayed discovery statute applicable to claims "pending on or commenced on or after" the effective dates.[7]

We are not persuaded by Kolar's argument that the 1989 statute could not have revived Lickteig's cause of action based on the statutory extension provision that existed in the 1989 session laws. Act of May 19, 1989, ch. 190, § 7, 1989 Minn. Laws at 485, 488. Kolar argues that under this provision, Lickteig had only until August 1, 1990, to sue. He similarly asserts that based on the 1992 amendment, Lickteig had until 1992 at the latest to sue. *See* Act of Apr. 29, 1992, ch. 571, art. 12, § 2,

1992 Minn. Laws at 1983, 2088 (providing plaintiffs with an extension for sexual-abuse claims based on intentional torts). But these provisions in the session laws were intended to afford sexual abuse victims whose claims would be barred by the delayed discovery statute of limitations an additional window of time to bring claims because they knew or had reason to know of the abuse before the new statute of limitations was enacted. Since the delayed discovery statute does not bar Lickteig's battery claim, these provisions do not apply.

Our conclusion that the delayed discovery statute applies retroactively is also consistent with our interpretation of the purpose behind the statute. In *Bugge,* 573 N.W.2d at 680, we reasoned,

> [t]he underlying rationale for the limitations period contained in Minn.Stat. § 541.073 is that many sexual abuse victims, especially young children, are psychologically and emotionally unable to recognize that they have been abused. As a result, these victims are often incapable of bringing their claims within the limitations period of Minn.Stat. §§ 541.07 and 541.15(a)(1). In enacting Minn.Stat. § 541.073, the legislature sought to address this phenomenon by giving sexual abuse victims additional time to recognize the abuse they suffered while placing a limit on when such claims may be brought.

In addition to the language establishing the effective date of the statute of limitations, the purpose of the statute to protect young sexual abuse victims suggests that

---

7. Although we have not previously specifically addressed the issue of whether the delayed discovery statute is retroactive, our analysis of cases involving the statute is consistent with our current holding. *See Blackowiak,* 546 N.W.2d at 1–3 (applying the 1989 delayed discovery statute to a claim based on sexual abuse that would have become stale around

1978 or 1979 to hold that plaintiff knew or had reason to know of the alleged sexual abuse more than 6 years prior to filing suit); *Bugge,* 573 N.W.2d at 680–82 (applying the 1989 delayed discovery statute to a claim based on sexual abuse that would have become stale long before the Legislature enacted the statute).

the Legislature intended the statute to be retroactive. We hold that the delayed discovery statute applies retroactively. It is for the district court to determine whether Lickteig suffered memory repression sufficient to toll the statute of limitations until 2007, when she first filed suit against Kolar. We answer the certified question in the affirmative.

Certified questions answered in the negative for the first and second questions and in the affirmative for the third question.