# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-1595

Sunshine Childcare center, LLC, et al.,
Appellants,

vs.

Ramsey County,
Defendant,

Jodi Harpstead, et al.,
Respondents,

County of Hennepin,
Respondent.

**Filed May 20, 2024**
**Affirmed**
**Larson, Judge**

Hennepin County District Court
File No. 27-CV-23-3010

James T. Smith, Huffman, Usem, Crawford, Greenberg & Smith, PA, Minneapolis, Minnesota (for appellants)

Keith Ellison, Attorney General, Emily B. Anderson, Assistant Attorney General, St. Paul, Minnesota (for respondents Jodi Harpstead, et al.)

Mary F. Moriarty, Hennepin County Attorney, Steven R. Gershone, Assistant County Attorney, Minneapolis, Minnesota (for respondent Hennepin County)

Considered and decided by Larson, Presiding Judge; Reyes, Judge; and Ede, Judge.

## SYLLABUS

A childcare provider does not possess a protected property interest in suspended Child Care Assistance Program payments or a revoked Child Care Assistance Program authorization when the agency temporarily suspends payment and authorization during a

pending investigation pursuant to Minn. Stat. §§ 119B.13, subd. 6(d), 119B.161, subd. 3, 245E.02 (2022 & Supp. 2023).

## OPINION

**LARSON**, Judge

Appellants Sunshine Childcare, LLC, City Child Care Center, LLC, and Angel's Fun Area, LLC, are childcare providers who previously served families qualifying for the Child Care Assistance Program (CCAP). In August 2022, the Minnesota Bureau of Criminal Apprehension (BCA) executed search warrants on appellants' childcare centers based on alleged probable cause that appellants submitted inaccurate attendance records. About a week later, respondent Minnesota Department of Human Services (DHS) sent letters to appellants temporarily suspending CCAP payments and temporarily revoking appellants' authorization to receive CCAP payments. Approximately six months later, BCA and DHS continued to have open investigations, but neither had brought any legal action against appellants. In response, appellants sued DHS, respondent Jodi Harpstead individually and in her capacity as commissioner of human services, respondent Hennepin County, and defendant Ramsey County,[1] challenging DHS's temporary decisions. The district court dismissed appellants' complaints for failure to state a claim upon which relief could be granted. Appellants argue the district court erred in dismissing their procedural-due-process claims because the district court applied an erroneous interpretation of the relevant statutory framework. For the reasons set forth below, we affirm.

---

[1] The parties stipulated to the dismissal of this appeal as it related to Ramsey County.

**FACTS**

The legislature adopted CCAP to expand access to affordable childcare by paying childcare costs for children of income-eligible families. *See* Minn. Stat. §§ 119B.02, subd. 1, 119B.05 (2022). DHS administers the program, while individual counties, including Hennepin County, manage program-eligibility determinations for both childcare providers and recipients. *See* Minn. Stat. §§ 119B.02, 119B.025, subd. 1, 119B.125 (2022). As a payment condition, all providers must, among other things, keep accurate daily attendance records. *See* Minn. Stat. § 119B.125, subd. 6(a)-(b).

Appellants' complaints alleged that, prior to September 1, 2022, appellants provided authorized CCAP services to qualified families. In late August 2022, BCA obtained and executed warrants to search appellants' childcare centers. The search warrants were based on alleged probable cause that appellants submitted inaccurate attendance records. Pursuant to the warrants, BCA officers and CCAP personnel seized records and computers from appellants.

On September 1, 2022, appellants received letters from DHS titled "Temporary Payment Stop," which informed them that:

> [CCAP] will temporarily stop paying [appellants], including any unpaid bills, until further notice AND all authorizations for CCAP [will] be closed or denied because:
>
> - Your program intentionally gave materially false information on billing forms and/or provided false attendance records. ([Minn. Stat. § 119B.13, subd.] 6(d)(1) or (2)); and/or
>
> - Your program meets criteria for temporary payment suspension under [Minn. Stat. § 245E.02.]

Appellants received a second letter from DHS on September 3, 2022, titled, "Child Care Assistance Notice of Decision." This letter informed appellants that they were no longer authorized to receive CCAP payments and reiterated that DHS would suspend payment to each appellant, including any unpaid bills. Between September 22, 2022, and February 2, 2023, appellants sent multiple letters to DHS denying the allegations, contesting the basis for the search warrants, and inviting DHS to request additional information.

On October 20, 2022, DHS responded to appellants in writing, citing the procedure in Minn. Stat. § 119B.161, subd. 4 (2022). DHS informed appellants that, on October 6, 2022, it reviewed appellants' written submissions and did not find that good cause existed to lift the temporary payment suspension or temporary revocation of CCAP authorization.

On December 12, 2022, appellants sent a letter to DHS demanding that it commence an administrative-disqualification action against appellants. DHS responded on December 20, 2022, informing appellants that it conducted an administrative review under section 119B.161, subdivision 4, on December 13, 2022. In this letter, DHS informed appellants that it was not obligated to commence an administrative-disqualification action while there was an ongoing criminal investigation.

On March 7, 2023, appellants filed civil complaints with the district court. As relevant to this appeal, appellants asserted procedural-due-process claims pursuant to 42 U.S.C. § 1983 (2018) and the Fourteenth Amendment to the U.S. Constitution, and requested declaratory judgment and injunctive relief related to the procedural-due-process claims. Appellants based their claims on the allegation that respondents failed to comply with Minn. Stat. §§ 119B.161 and 256.046 (2022) because DHS did not commence an

4

administrative-disqualification action against appellants immediately upon accusing appellants of intentional program violations and, therefore, DHS no longer had authority to take the temporary actions. Respondents moved to dismiss the complaints for failure to state a claim upon which relief can be granted. The district court heard arguments on the motions on May 26, 2023, and issued its written order dismissing the complaints with prejudice on August 24, 2023.

This appeal follows.

## ISSUE

Did appellants fail to state a claim upon which relief can be granted because they lack a protected property interest in the temporarily suspended CCAP payments and temporarily revoked CCAP authorization?

## ANALYSIS

Appellants challenge the district court's decision to dismiss their complaints for failure to state a claim under Minn. R. Civ. P. 12.02(e). When reviewing the dismissal of a complaint for failure to state a claim, we "review the legal sufficiency of the claim de novo to determine whether the complaint sets forth a legally sufficient claim for relief." *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 692 (Minn. 2014). We "accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 606 (Minn. 2014). On appeal, appellants hinge their declaratory-

5

judgment and injunctive-relief claims on one legal theory—that respondents violated appellants' right to procedural due process.[2]

"Procedural due process protections restrain government action which deprives individuals of liberty or property interests within the meaning of the due process clause[s] of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 7 of the Minnesota Constitution." *Sweet v. Comm'r of Human Servs.*, 702 N.W.2d 314, 318 (Minn. App. 2005) (quotation omitted), *rev. denied* (Minn. Nov. 15, 2005). The U.S. Constitution and Minnesota Constitution afford citizens identical due-process protections. *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn. 1988). When we evaluate a procedural-due-process claim, we must first identify "whether the government has deprived the individual of a protected life, liberty, or property interest." *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). When a plaintiff fails to identify the deprivation of a protected interest, there is no procedural-due-process violation, and our analysis ends. *See id.*

Property interests are protected, but not created, by the Constitution. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Rather, property interests arise from an

---

[2] DHS argues that Minn. Stat. §§ 119B.161 and 256.046 do not give rise to independent causes of action. Appellants did not respond to this argument and, upon our review of the relevant statutes, we agree with DHS that neither statute gives rise to an independent cause of action outside the administrative-review procedures articulated in those statutes. *See, e.g.*, *Lickteig v. Kolar*, 782 N.W.2d 810, 814 (Minn. 2010) ("Generally, a statute does not give rise to a civil cause of action unless the language of the statute is explicit or it can be determined by clear implication." (quotation omitted)). Consequently, appellants' declaratory-judgment claims and requests for injunctive relief rise or fall with appellants' procedural-due-process claim.

independent source, such as a statute or contract "that secure[s] certain benefits and that support[s] claims of entitlement to those benefits." *Id.* A property interest does not arise simply from a party's unilateral expectation. *Id.* Accordingly, we first consider the statutory scheme governing the temporarily suspended CCAP payments and temporarily revoked CCAP authorization.

DHS has the authority to investigate suspected financial misconduct. *See* Minn. Stat. §§ 119B.13, 245E.02 (2022 & Supp. 2023). If DHS finds by a preponderance of the evidence that a childcare provider committed financial misconduct, DHS may, among other actions: (1) revoke the childcare provider's authorization to participate in CCAP, Minn. Stat. § 119B.13, subd. 6(d); (2) stop payments or refuse to pay bills the childcare provider submits, *id.*; (3) refer the matter to law enforcement for criminal prosecution, Minn. Stat. § 245E.02, subd. 4(b)(1); (4) suspend, deny, or terminate payments to a provider, *id.*, subd. 4(c)(4); and/or (5) pursue administrative disqualification, *id.*, subd. 4(c)(1). Regarding administrative disqualification, section 256.046, subdivision 3(a), provides that "[t]he department shall pursue an administrative disqualification, if the child-care provider is accused of committing an intentional program violation, in lieu of a criminal action when it has not been pursued."

When DHS temporarily suspends CCAP payments and temporarily revokes CCAP authorization (hereinafter, "temporary suspension and revocation"), the childcare provider has a right to administrative review. Minn. Stat. § 119B.161, subd. 1. As relevant here, "[t]he commissioner may find that good cause exists . . . not to continue a denial, revocation, or suspension of a provider's authorization if . . . the commissioner determines

7

that the denial, revocation, or suspension should be removed based on the provider's written submission." Minn. Stat. § 119B.161, subd. 4.

If the agency does not find good cause to cease temporary suspension and/or revocation, the decision remains in effect until:

> (1) the commissioner or a law enforcement authority determines that there is insufficient evidence warranting the action and the commissioner does not pursue an additional administrative remedy under chapter 245E or section 256.98; or
> (2) all criminal, civil, and administrative proceedings related to the provider's alleged misconduct conclude and any appeal rights are exhausted.

Minn. Stat. § 119B.161, subd. 3.

Appellants allege that they were denied procedural due process because DHS did not comply with the relevant statutes. According to appellants, section 256.046, subdivision 3(a), required DHS to commence administrative-disqualification proceedings when DHS first accused appellants of intentional program violations—i.e., when it sent the September 1 and September 3, 2022 letters. Appellants assert that DHS's failure to commence those proceedings means that appellants are currently entitled to—that is, have a property interest in—CCAP payments and CCAP authorization because section 119B.161, subdivision 3, no longer authorizes any temporary actions. In short, appellants assert that the statutes do not permit an interim period of investigation after DHS accuses a childcare provider of intentional program violations.

Appellants' argument presents a question of statutory interpretation that we review de novo. *Cocchiarella v. Driggs*, 884 N.W.2d 621, 624 (Minn. 2016). When interpreting

the meaning of a statute, we "first look to see whether the statute's language, on its face, is clear or ambiguous." *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000). In doing so, "words and phrases are construed according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08(1) (2022). "A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Schroedl*, 616 N.W.2d at 277 (quotation omitted). If a statute is unambiguous, we apply the statute's plain meaning. *State v. Schmid*, 859 N.W.2d 816, 820 (Minn. 2015). Statutes are construed as a whole, and statutory language is interpreted "to give effect to all of its provisions." *Schroedl*, 616 N.W.2d at 277.

We disagree with appellants that section 256.046, subdivision 3(a), required DHS to commence an administrative-disqualification proceeding immediately upon accusing appellants of intentional program violations for two reasons. First, the statute governing investigations provides that administrative disqualification is just one of several sanctions DHS *may* impose when a preponderance of the evidence shows an intentional program violation. *See* Minn. Stat. § 245E.02, subd. 4(c). Second, both section 119B.161, subdivision 3, and section 256.046, subdivision 3(a), contemplate a period of continued investigation after temporary suspension and revocation. Section 256.046 specifically provides that DHS need only pursue administrative disqualification "in lieu of a criminal action when it has not been pursued."[3] And section 119B.161, subd. 3(1), indicates that

---

[3] Appellants argue that this exception only applies if, at the time of suspension or revocation, law enforcement has already commenced criminal action. We disagree. The statute governing DHS's investigations specifically provides that, after an investigation, DHS can "refer the investigation to law enforcement." Minn. Stat. § 245E.02,

9

*after* temporary suspension and revocation occurs, DHS or law enforcement may determine "there is insufficient evidence warranting the action." In order for either provision to have any meaning, the statute must contemplate a continuing period of investigation during which law enforcement or DHS can decide whether to commence criminal, civil, or administrative proceedings. *See Schroedl*, 616 N.W.2d at 277 ("A statute should be interpreted, whenever possible, to give effect to all of its provisions . . . ."). We therefore conclude that DHS complied with the relevant statutes when it imposed temporary suspension and revocation during a pending investigation.

Respondents argue that, because the statutes permit temporary suspension and revocation during a pending investigation, appellants have failed to allege constitutionally protected property interests on which to base their procedural-due-process claims. Appellants disagree, arguing that even if the statutes allow for some period of investigation—and we conclude they do—the length of the investigation in this case violates their right to due process.

We agree with respondents that appellants have not alleged a protected property interest because the temporary suspension and revocation are indisputably tied to a pending investigation. As set forth above, the statutes governing the CCAP program allow temporary suspension and revocation during a pending investigation. *See* Minn. Stat. § 119B.161, subd. 3. Because the statutes authorize DHS to take these actions during a pending investigation, the statutes do not confer upon appellants an entitlement to CCAP

---

subd. 4(b)(1). Thus, the statutory framework presupposes that a criminal investigation may occur after DHS's investigation.

payments or CCAP authorization during the investigation. Put another way, the CCAP statute does not create a protected property interest upon which appellants can rely to sustain their procedural-due-process claims because DHS has acted in accordance with the statute.[4] *See Roth*, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.").

Our nonprecedential decision in *Shire v. Harpstead*, No. A19-0807, 2019 WL 7287088 (Minn. App. Dec. 30, 2019), *rev. denied* (Minn. Mar. 25, 2020) is instructive.[5] There, applying the relevant statute, DHS suspended Medicaid payments during a pending fraud investigation, but did not prohibit the providers from serving clients. *Id.* at *4. Appellants sued DHS arguing the suspension of Medicaid payments "deprived them of their protected interests without due process." *Id.* at *2. The district court granted DHS's motion to dismiss, and we affirmed, concluding a medical-care provider did not have a protected property interest in the temporarily suspended Medicaid payments. *Id.* at *1-2. Citing federal authorities, we noted that numerous courts have rejected the argument that a temporary suspension from a government program during a fraud investigation implicates a protected property right. *Id.* at *4-5 (citing *Personal Care Prods., Inc. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011); *Guzman v. Shewry*, 552 F.3d 941, 953 (9th Cir. 2009);

---

[4] Hennepin County separately argues appellants failed to allege a case or controversy against Hennepin County. Because we conclude this case fails on the merits, we need not decide that question.

[5] While nonprecedential, and therefore not binding, we find this case persuasive. *See* Minn. R. Civ. App. P. 136.01, subd. 1(c).

*Clarinda Home Health v. Shalala*, 100 F.3d 526, 531 (8th Cir. 1996); *Key Med. Supply, Inc. v. Burwell*, 764 F.3d 955, 965 (8th Cir. 2014)).

Similarly here, the Minnesota statutes specifically allow temporary suspension and revocation during a pending investigation.[6]  Minn. Stat. §§ 119B.13, subd. 6(d), 245E.02, subd. 4(c)(4).  Like in *Shire*, those actions do not prevent appellants from operating a licensed childcare center during the investigation.  And appellants have failed to show how these temporary actions differ in any material way from other temporary suspensions from government programs during an investigation into program violations.  Therefore, we conclude appellants were not deprived of a protected property interest and thus failed to state a claim upon which relief can be granted.

We note that, at its core, appellants' claim is that the length of this investigation has converted a temporary decision into a permanent loss of CCAP payments and CCAP authorization.  Like in *Shire*, we do find it troubling that the investigations in this matter have taken over a year with no concrete results.  But unlike other investigations under the CCAP program, *see, e.g.*, Minn. Stat. § 119B.13, subd. 6(e) (setting a three-month timeframe for withholding payment or authorization), the legislature did not impose a deadline for law-enforcement or DHS investigations involving the type of misconduct alleged here.  Given the statutory scheme and the length of the suspension at issue, we conclude appellants did not allege a constitutionally protected property interest.[7]

---

[6] We take no position on whether a childcare provider possesses a constitutionally protected property interest in CCAP payments and authorization under different circumstances.
[7] We note that our decision does not mean a CCAP recipient is without a remedy if DHS indefinitely suspends payments and revokes CCAP authorization without a hearing.  DHS

**DECISION**

Because appellants lack a protected property interest in temporarily suspended CCAP payments and temporarily revoked CCAP authorization during a pending investigation, the district court correctly dismissed appellants' procedural-due-process claims.

**Affirmed.**

---

admits that if, for example, the criminal statute of limitations has run, DHS would need to proceed with one of the two actions set forth in section 119.161, subdivision 3. Further, other remedies are available to parties looking to force an agency to take an action required by statute for which there is no express timeline. *See, e.g.*, Minn. Stat. § 586.01 (2022).