W.J.L., Respondent,

v.

Caryl J. BUGGE, individually and in her official capacity as a teacher, coach, and counselor at Cooper High School, Appellant,

Elmer Kemppainen, individually and in his official capacity as principal at Cooper Senior High School, et al., Defendants.

No. C6–96–1619.

Supreme Court of Minnesota.

Jan. 22, 1998.

Cousineau, McGuire & Anderson, Chartered, Barbara A. Burke, Andrea E. Reisbord, Minneapolis, for appellant.

Lindquist & Vennum, P.L.L.P., Edward M. Glennon, Ann E. Kennedy, Minneapolis, Barden & Associates, R. Christopher Barden, Plymouth, for respondent.

## OPINION

PAGE, Justice.

This appeal arises out of a personal injury action brought by W.J.L., a student at Cooper Senior High School ("Cooper") between 1975 and 1979, alleging that Caryl Bugge ("Bugge"), a teacher at Cooper during the same time period, sexually abused W.J.L. between March 1978 and August 1980.[1] Bugge moved the district court for summary judgment, seeking dismissal of all of W.J.L.'s claims. With respect to W.J.L.'s sexual battery claim, Bugge contended that the claim was barred by the statute of limitations set out in Minn.Stat. § 541.073 (1996).[2]

The district court agreed and granted Bugge's summary judgment motion on the sexual battery claim.[3] In doing so, the dis-

---

1. W.J.L. also sued Elmer Kemppainen, the principal at Cooper High School during the relevant time period, and Independent School District No. 281, the school district responsible for Cooper. W.J.L.'s complaint asserts a total of seven counts: (1) a claim against Bugge for violation of her rights under 42 U.S.C. § 1983; (2) a claim against Kemppainen for violation of her rights under 42 U.S.C. § 1983; (3) a claim against Kemppainen and the school district for negligence; (4) a claim against Bugge and the school district for sexual battery; (5) a claim against Bugge and the school district for intentional infliction of emotional distress; (6) a claim against Bugge and the school district for fraud; and (7) a claim against Kemppainen and the school district for negligent infliction of emotional distress.

2. That statute, sometimes referred to as the "delayed discovery statute," in relevant part, provides that:

> Subd. 1. Definition. As used in this section, "sexual abuse" means conduct described in sections 609.342 to 609.345.
> Subd. 2. Limitations period. (a) An action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse.

Minn.Stat. § 541.073.

3. The district court also granted Bugge's motion with respect to all of the other claims against her and granted Kemppainen's and the school district's motions for summary judgment which re-

trict court found that a reasonable person in W.J.L.'s position would either know or have reason to know that the alleged sexual contact with Bugge constituted sexual abuse at the time it occurred, or at least no later than the termination of W.J.L.'s and Bugge's relationship in 1980. W.J.L. appealed, and the court of appeals reversed. The court of appeals concluded that summary judgment was improper because a genuine issue of material fact exists "as to when W.J.L. knew or should have known that she had been abused." On the facts presented by this record, we conclude that a reasonable person standing in W.J.L.'s shoes would either know or have reason to know more than six years before this lawsuit was commenced that Bugge's alleged conduct constituted sexual abuse. Therefore, we reverse.

The record indicates that W.J.L. is a 36–year–old woman. As an adolescent, W.J.L. had a troubled home life. Her father was an alcoholic who often abused her and her two brothers; she was also abused by her mother.[4] Bugge is a 58–year–old retired teacher who taught at Cooper during the time W.J.L. was a student there. W.J.L. and Bugge met in 1976, when W.J.L. was a sophomore. In her junior year, W.J.L. took a math class from Bugge. Sometime in late 1977 or early 1978, W.J.L. sought out the head guidance counselor at Cooper, Jane Erdmann, who, according to W.J.L., suggested that W.J.L. spend time with Bugge to help W.J.L. deal with her troubled home life. Ultimately, Bugge befriended W.J.L. and regularly took her out to restaurants and, on one occasion, the ballet. In addition, Bugge drove her to tennis practice as well as to tournaments.

W.J.L. alleges that her relationship with Bugge became sexual sometime in March 1978 when, after the two had gone out to dinner one evening, she ended up spending the night at Bugge's one-bedroom apartment. At the time, W.J.L. was in her junior year of high school and was 16 years and 11 months old. During the course of the night, Bugge began fondling W.J.L. The fondling eventual-

ly escalated to mutual masturbation. W.J.L recalls that, at the time, she was "confused" by this incident. This type of sexual contact between W.J.L. and Bugge continued over the next several months.

Sometime before the start of her senior year, W.J.L. moved in with Bugge in order to escape her troubled home life. W.J.L.'s parents were aware that she had moved in with Bugge and evidently did not object to that living arrangement. While living with Bugge, W.J.L. sometimes slept on the couch and sometimes she and Bugge shared the same bed. Sexual contact between the two continued through W.J.L.'s freshman year in college at the University of Minnesota and only ended when W.J.L. left Minnesota to attend California State University at Northridge on a tennis scholarship in August of 1980. According to W.J.L., Bugge repeatedly told her that W.J.L. was a lesbian and that their relationship was therapeutic. W.J.L. alleges that after the sexual contact with Bugge ended, she did not think about or talk to anyone about Bugge's conduct until 1992.

At some point in 1992, W.J.L. read a passage in the book *Prince of Tides*, which referenced same sex rape, and "freaked out." Although W.J.L. does not claim to suffer from a repressed memory, she claims this reaction occurred because she began thinking about having been sexually abused by Bugge. Since September 1992, W.J.L. has sought psychological counseling through psychologist Dr. Maryann Syers and, later, psychologist Dr. Cheryl Lee Arnold. W.J.L. claims that as a result of Bugge's sexual abuse, she suffers from sexual identity confusion and distrust of people in positions of authority.

This case again raises the question of when an alleged victim of sexual abuse either knew or had reason to know of the sexual abuse for purposes of determining when the statute of limitations begins to run. In Minnesota, causes of action for torts resulting in personal injury are typically subject to a two-year statute of limitations. Minn.Stat. § 541.07

sulted in all of the claims against them being dismissed. There are no issues on appeal to this court with respect to any of these claims and, therefore, none of these claims will be discussed further.

4. While the record is unclear, it obliquely suggests that the abuse by both parents may have included sexual abuse.

(1996). If the plaintiff is under the age of 18 when the cause of action arises, however, the statute of limitations is suspended until one year after the plaintiff reaches the age of majority. Minn.Stat. § 541.15(a)(1) (1996). Notwithstanding Minn.Stat. §§ 541.07 and 541.15(a)(1), the Minnesota legislature enacted Minn.Stat. § 541.073 for personal injury actions based on sexual abuse. This statute provides that personal injury actions based on sexual abuse "must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse." Minn.Stat. § 541.073.

The underlying rationale for the limitations period contained in Minn.Stat. § 541.073 is that many sexual abuse victims, especially young children, are psychologically and emotionally unable to recognize that they have been abused. As a result, these victims are often incapable of bringing their claims within the limitations period of Minn.Stat. §§ 541.07 and 541.15(a)(1).[5] In enacting Minn.Stat. § 541.073, the legislature sought to address this phenomenon by giving sexual abuse victims additional time to recognize the abuse they suffered while placing a limit on when such claims may be brought. The limitations period found in section 541.073 was not intended to be open-ended.

 Generally, the date on which a plaintiff knows or has reason to know that he or she was sexually abused involves a factual determination and is, therefore, a question for the trier of fact. *See Wittmer v. Ruegemer*, 419 N.W.2d 493, 498 (Minn.1988). However, summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and either party is entitled to judgment "as a matter of law." Minn. R. Civ. P. 56.03; *Britton v. Koep*, 470 N.W.2d 518, 524 (Minn. 1991). The burden is on the moving party to show the absence of an issue of material fact, and the reviewing court must view the evidence in the light most favorable to the nonmoving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). To forestall summary judgment, the nonmoving party must do more than rely on "unverified or conclusionary allegations" in the pleadings or postulate evidence which might be produced at trial. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995) (citation omitted). The nonmoving party must present specific facts which give rise to a genuine issue of material fact for trial. Here, for purposes of summary judgment, Bugge has conceded that W.J.L. was abused as alleged. Thus, the issue we must resolve is whether there is a genuine issue of material fact for trial as to whether W.J.L. knew or had reason to know more than six years prior to commencing this lawsuit that the alleged abuse had occurred.

---

5. The Minnesota legislature, in drafting the delayed discovery statute, acknowledged that repressed memory, denial, shame, and other similar factors may prevent sexual abuse victims from coming forward with actions against their alleged abusers in a timely fashion. *See generally* Hearing on S.F. 315 Before the Criminal Law Div. of the Senate Judiciary Comm. (Feb. 17, 1989) (available on tape at the Minnesota Legislative Library, Tape 2); *see also Blackowiak v. Kemp*, 546 N.W.2d 1, 4 (1996) (Gardebring, J., dissenting) (recognizing that Minn.Stat. § 541.073 was enacted to address the sexual abuse claims of children as well as "in recognition of the fact that injuries from sexual abuse are often psychological in nature, that they may be essentially latent for many years * * * and that shame and denial often accompany the events."); *see generally* Matthew J. Eisenberg, Comment, *Recovered Memories of Childhood Sexual Abuse: The Admissibility Question*, 68 Temp. L.Rev. 249, 250 (1995) ("When children are sexually abused they can repress or otherwise van-

ish memories of their abuse well into adulthood."); Gary M. Ernsdorff and Elizabeth F. Loftus, *Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression*, 84 J.Crim. L. & Criminology 129, 130 (1993) ("While many victims of childhood sexual abuse remember the abusive incidents throughout their lifetimes, some victims apparently repress, or subconsciously force, the memories from their minds."); Maria L. Imperial and Jeanne B. Mullgrav, *The Convergence Between Illusion and Reality: Lifting the Veil of Secrecy Around Childhood Sexual Abuse*, 8 St. John's J. Legal Comment. 135, 138 (1992) (the sexual abuse victim may be coerced into silence by threats of harm to her or her family by the abuser); Jocelyn B. Lamm, Note, *Easing Access to the Courts for Incest Victims: Toward an Equitable Application of the Delayed Discovery Rule*, 100 Yale L.J. 2189, 2194 (1991) (some sexual abuse victims cope with the abuse by dissociating or repressing memory of the abuse).

■ Under a plain reading of the delayed discovery statute, for the statute to come into play, the complained of conduct must constitute sexual abuse as defined in Minn.Stat. § 541.073, subd. 1, which means it must be conduct described in Minn.Stat. §§ 609.342–609.345. Upon establishing that the plaintiff was sexually abused, it must also be determined whether the alleged sexual abuse resulted in "personal injury" to the plaintiff. For purposes of Minn.Stat. §§ 609.342–609.345, personal injury is defined as "bodily harm * * * or severe mental anguish or pregnancy." [6] Minn.Stat. § 609.341, subd. 8 (1996). Once it is determined that the plaintiff has been sexually abused and that personal injury has occurred, the remaining question to be answered is when did the plaintiff know or have reason to know that he or she had been abused.[7]

■ In *Blackowiak v. Kemp*, we said that "concepts of sexual abuse and injury within the meaning of this statute are essentially one and the same, not separable—*as a matter of law one is 'injured' if one is sexually abused.*" 546 N.W.2d 1, 3 (Minn.1996) (emphasis added). We went on to say that, in answering the question of when one knew or had reason to know that they were sexually abused, the question must be answered through the application of a reasonable person standard because "[w]hile the manifestation and form of the injury is significant to the victim, it is simply not relevant to the ultimate question of the time at which the complainant knew or should have known that he/she was sexually abused." *Id.*

The dissent in *Blackowiak* argued that the court, in holding "as a matter of law one is 'injured' if one is sexually abused," and in defining the " 'ultimate question' as 'the time at which the complainant knew or should have known *that he/she was sexually abused,*' " erred because, under the language of the statute, it is not knowledge of personal injury or of sexual abuse that triggers the limitations period, it is knowledge of the causal link between the two. *Blackowiak,* 546 N.W.2d at 4 (Gardebring, J., dissenting) (citation omitted) (emphasis in original). The same arguments are raised in dissent here. Adopting the rationale of Justice Gardebring's dissent, counsel for W.J.L., at oral argument, forcefully argued that *Blackowiak* was wrongly decided. Both Justice Gardebring's and counsel for W.J.L.'s reading of *Blackowiak* is too restrictive. Notwithstanding their protests, in *Blackowiak,* we said nothing more than that implicit in the act of sexual abuse is personal injury, and, because the two are intertwined, the victim is immediately put on notice of the causal connection between the abuse and injury. Accordingly, the statute of limitations begins to run once a victim is abused unless there is some legal disability, such as the victim's age, or mental disability, such as repressed memory of the abuse, which would make a reasonable person incapable of recognizing or understanding that he or she had been sexually abused. The reason that Blackowiak's claims failed on statute of limitations grounds was simply that there were no legal or mental disabilities preventing Blackowiak from recognizing or understanding that he had been sexually abused and there was sufficient evidence in the record to establish that a reasonable person standing in Blackowiak's shoes would have either known or had reason to know of the alleged sexual abuse more than six years prior to his lawsuit being filed. *Id.* at 3.

Bugge claims that the court of appeals erred in concluding that there is a genuine issue of material fact for trial as to when W.J.L. knew or had reason to know that she had been sexually abused. We agree. The record presented in this case is clear. W.J.L. alleges that shortly before her seventeenth birthday, one of her female teachers

---

6. "Bodily harm" is defined as "physical pain or injury, illness, or any impairment of physical condition." Minn.Stat. § 609.02, subd. 7 (1996).

7. In order to benefit from the delayed discovery statute, the plaintiff must demonstrate that he or she did not know or have reason to know of each element of "personal injury" that resulted from the alleged abuse. Thus, for example, a plaintiff whose personal injury included both bodily harm and severe mental anguish must not only demonstrate why he or she did not know or have reason to know of the severe mental anguish, but also why he or she did not know or have reason to know of the bodily harm resulting from the alleged sexual abuse prior to six years before filing suit.

engaged her in repeated and continuous sexual contact, including mutual masturbation. That sexual contact took place between March 1978 and August 1980 and, according to W.J.L., resulted in her suffering personal injury.[8] W.J.L. further alleges that she simply did not think about being abused by Bugge from the time the abuse ended until sometime in 1992.

Here, absent a disability which serves to delay the running of the statute of limitations, the limitations period under the delayed discovery statute would have begun to run one year after W.J.L. reached the age of majority and expired when she turned 25. Minn.Stat. § 541.15(a)(1). W.J.L. does not allege any disability which would have prevented her from pursuing her sexual abuse claims against Bugge within six years of the time she turned 19 years of age. Further, W.J.L. has failed to provide evidence that a reasonable person standing in her shoes would not have known, at the time, that she had been sexually abused by Bugge. She does not allege that she repressed her knowledge of the abuse, or that she was threatened by Bugge, and, consequently, did not come forward sooner. Nor does W.J.L. claim that she was so traumatized by the sexual abuse that she was incapable of filing this lawsuit in a timely manner.

Instead of offering a disability or other reason that would justify delaying the running of the statute of limitations in this case, W.J.L. contends that she did not recognize that she had been emotionally injured and only recalls being "confused" by Bugge's sexual abuse at the time. As a result, W.J.L. argues that she was incapable of understanding the nature of the sexual abuse, the extent of her injuries, and the connection between the two until 1992.

In support of her argument, W.J.L. offers the affidavit of Dr. Arnold, who opined that the reason W.J.L. did not know that she was injured by Bugge's alleged actions was because:

[A] reasonable person in W.J.L.'s situation would not have known that [Bugge's] sexual abuse caused her injuries until she was able to obtain psychological distance and the support of a knowledgeable and empathic person to assist her in sorting out her feelings and in being able to reflect on her experience.

The problem with Dr. Arnold's opinion, however, is that it makes an assertion about what a "reasonable person in W.J.L.'s situation would not have known" without providing any support for that conclusion other than what W.J.L. claims she knew. A discussion of what W.J.L. claims she knew is not helpful to this court, as we rejected the application of a "wholly subjective inquiry into an individual's unique circumstance" in *Blackowiak*. 546 N.W.2d at 3. Neither W.J.L. nor Dr. Arnold explain why a reasonable person who had been sexually abused, as alleged by W.J.L., would not either know or have reason to know that she had been the victim of such abuse more than six years prior to the commencement of this lawsuit. Merely not thinking about the abuse is not enough to delay the running of the statute of limitations.

Based on our careful review of the record before us, viewed in the light most favorable to W.J.L., we can only conclude that W.J.L., in response to Bugge's summary judgment motion, failed to present specific facts giving rise to a genuine issue of material fact for trial as to when she knew or had reason to know that she had been sexually abused.

Reversed.

GARDEBRING, Justice (dissenting).

I respectfully dissent. The majority in this case continues the evisceration of the "delayed discovery" statute of limitations in sexual abuse cases begun in *Blackowiak v. Kemp*, 546 N.W.2d 1 (Minn.1996). I disagreed then and I disagree now. For the reasons stated in my dissent in that case, as well as the reasons below, I would affirm the court of appeals in this case.

The language of the statute is clear:

any bodily harm she may have suffered as a result of the sexual abuse. *See* discussion *supra* note 7.

8. While the parties focus their argument as to when W.J.L. knew or had reason to know of the sexual abuse on W.J.L.'s emotional injury claim, we note that they do not address the impact of

An action for damages based on personal injury caused by sexual abuse must be commenced within six years of the time the plaintiff *knew or had reason to know that the injury was caused by the sexual abuse.*

Minn.Stat. §. 541.073, subd. 2(a) (1996) (emphasis added). Thus, the event that triggers the running of the statute of limitations is not the occurrence of either the sexual abuse or the personal injury, but rather the *knowledge* that the one caused the other. To assert, as the majority did in *Blackowiak* and does again here, that "as, a matter of law, one is 'injured' if one is sexually abused," ante at 681 (citation omitted), simply begs the question. The key inquiry must be, *"When* did the injured party know or have reason to know that the injury was *caused* by the abuse?"

However, in contradiction of the statute, the majority states that "because the [sexual abuse and personal injury] are intertwined, the victim is *immediately* put on notice of the causal connection between the abuse and injury." Ante, at 681 (emphasis added). The majority reads out the central element of the statute—knowledge of the link between the abuse and the injury—in favor of an analysis nowhere supported by the legislature's chosen language. This we may not do.

The majority is equally mistaken in its view that only some legal disability, such as the victim's age or repressed memory of the abuse, suspends the running of the statute. First, Minn.Stat. § 541.15 (1996) already provides, as a matter of general law applying to all statutes of limitations, that a disability such as youth or mental disability suspends the running of the period of limitation until the disability is removed. Thus, there would have been no need for the legislature to adopt Minn.Stat. § 541.073 if it meant to add nothing to what was already provided in existing statutes. Second, there is no language in the statute that supports the majority's view on this point: no reference to repressed memory, no reference to mental disability, no reference to the age of plaintiff.

If the legislature had intended such a restrictive view of this issue, it would have so provided. It did not. Instead, it provided, in the plainest language possible, a special scheme directed to the unusual psychological circumstances that exist for victims of sexual abuse, especially young victims; that is, they simply may not realize that psychological or emotional difficulties manifested many years after the fact, may be the *result* of sexual abuse occurring years earlier.

Finally, as I stated in *Blackowiak*, the majority's action is especially troubling where the issue is the propriety of summary judgment in an action brought by a sexual abuse victim against an alleged abuser. Analysis of the "knew or should have known" factor of the statute is under an objective, reasonable person standard and is generally a question of fact for the jury. *Blackowiak* at 3.

Here, the plaintiff W.J.L. argues that she did not recognize that she had been sexually abused or that the abuse had caused her injury until years later. She offered, in support of her position, the affidavit of a treating psychologist, to the effect that a reasonable person in W.J.L.'s position would not have been able to recognize the cause of the emotional injuries until she was able to obtain psychological distance and the support of therapy. In addition, she presented her own testimony that at the time of the abuse she trusted Bugge, who repeatedly told her that their relationship was healthy and therapeutic. She also testified that she discussed the events with no one until 1992. At that time, her recognition of the past sexual abuse was triggered by reading certain passages from a novel. She then sought counseling and became aware that her sexual experiences with Bugge some 14 years earlier were indeed abusive and were the source of later emotional difficulties.[9]

Based upon the controlling standard, and taking the evidence offered in the light most favorable to the non-moving party, W.J.L., I conclude that there remains a question of material fact as to when W.J.L. knew or

---

**9.** This fact pattern is even stronger than that in *Blackowiak* because here the abuser attempted to persuade the victim that their relationship was therapeutic, thus seeking to thwart any perception by the victim that abuse had occurred.

should have known that she had been abused. Summary judgment is not proper, and I would affirm the court of appeals and remand to the district court.

BLATZ, Justice (dissenting).

I join in the dissent of Justice Gardebring.