**JANE DOE 43C, et al., Appellants,**

v.

**DIOCESE OF NEW ULM,**
**et al., Respondents.**

**No. A10–374.**

Court of Appeals of Minnesota.

Aug. 31, 2010.

---

Jeffrey R. Anderson, Kathleen P. O'Connor, Jeff Anderson & Associates, St. Paul, MN, for appellants.

Thomas B. Wieser, Jennifer R. Larimore, Meier, Kennedy & Quinn, Chtd., St. Paul, MN, for respondents.

Considered and decided by PETERSON, Presiding Judge; WRIGHT, Judge; and LARKIN, Judge.

## OPINION

LARKIN, Judge.

Appellants assert that the district court erred by granting summary judgment in respondents' favor on their intentional-misrepresentation claim. We conclude that the district court erred by determining that appellants' claim was time barred under the statute of limitations. But because appellants' intentional-misrepresentation claim is based solely on nondisclosure, and appellants did not establish that respondents had a duty to disclose, the district court correctly determined that appellants failed to present sufficient evidence of a misrepresentation, which is an essential element of their claim. We therefore affirm the district court's award of summary judgment for respondents.

## FACTS

Appellants Jane Does 43C, 43E, 43F, and 43G allege that they were sexually abused by Father David Roney when he served as a priest at St. Francis Parish in Benson and St. Mary's Parish in Willmar, both within the Diocese of New Ulm. Appellants allege that the sexual abuse occurred between 1965 and 1975. Father Roney was ordained in 1945. He served as the pastor at St. Francis Catholic Church in Benson from 1963 to 1967. In 1967, Father Roney was assigned to St. Mary's Catholic Church in Willmar, where he remained until 1980.

In 1970, a parent complained to Father G., another local priest, that Father Roney had been observed engaging in what parents considered to be "inappropriate sexual contact." That same year, two parishioners reported that a parent had complained to them that Father Roney was having inappropriate sexual contact with that parent's daughter. Based on these reports, Father G. asked Sister M., the principal at the St. Mary's

Parish school, to watch Father Roney for continued inappropriate behavior. Sister M. banned Father Roney from the school lunchroom and the "little kids' playground," but Father G. and Sister M. did not tell anyone about the abuse allegations.

Jane Doe 43C alleges that she was sexually abused by Father Roney between 1969 and 1972 at St. Mary's Parish. In 1980, Jane Doe 43C told her mother and her boyfriend about the abuse. Jane Doe 43E alleges that she was sexually abused by Father Roney in 1975 at St. Mary's Parish. Jane Doe 43F alleges that she was sexually abused by Father Roney in 1965 at the St. Francis School. And Jane Doe 43G alleges that she was sexually abused by Father Roney between 1968 and 1975 at St. Mary's Parish. In 1993, Jane Doe 43G attended a retreat where she heard a speaker talk about clergy sexual abuse. When she returned home after the retreat, she told her husband that she had been "abused by a priest" when she "was a kid."

Father Roney retired from active ministry in 1993 and took up residence at the Diocese of New Ulm's mission in Guatemala in 1994. In 2003, Father Roney died, and the Diocese of New Ulm publicly acknowledged that he had sexually abused children. In 2004, appellants commenced a joint action in district court against respondents Diocese of New Ulm, St. Francis Parish,[1] and St. Mary's Parish, asserting claims of vicarious liability, breach of fiduciary duty, negligent supervision, negligent retention, negligence, and fiduciary fraud. Appellants later amended their complaint to dismiss the fiduciary-fraud claim and add an intentional-misrepresentation claim.

In January 2008, the district court granted respondents' motion for summary judgment, concluding that appellants' claims were untimely under the delayed-discovery statute of limitations, Minn.Stat. § 514.073 (2008). On appeal, this court affirmed summary judgment on the non-fraud claims, but reversed summary judgment on the intentional-misrepresentation claim, concluding that the district court had applied the incorrect statute of limitations. *Jane Doe 43C v. Diocese of New Ulm*, No. A08–0729, 2009 WL 605749, at *1 (Minn.App. Mar.10, 2009). We remanded the case and instructed the district court to determine whether the intentional-misrepresentation claim was time-barred under the fraud statute of limitations and, if appropriate, whether summary judgment was proper on the merits. *Id.* at *5.

On remand, respondents again moved for summary judgment. The district court granted respondents' motion on two grounds. First, the district court concluded that the intentional-misrepresentation claim was untimely under the fraud statute of limitations which is codified in Minn. Stat. § 541.05 (2008). The court reasoned that

> as each of the [appellants] attained majority, or when the evidence showed they were aware of their non-fraud claims, [they] could have filed suit against [respondents] on those claims, obtained discovery during the litigation from [respondents], and realized the facts which they allege are misrepresentations that they learned in 2003.

The district court stated that "[e]ven if the only way to obtain information about alleged fraud was through the discovery process, a timely initiation of their non-fraud

---

1. Appellants do not appeal the grant of summary judgment as to St. Francis Parish and Jane Doe 43F.

claims would have allowed [appellants] to obtain the information more than 6 years before 2004."

The district court also granted summary judgment on the merits. The court reasoned that "[s]ilence does not constitute fraud when there is no duty to disclose," and that appellants had "removed any allegation that [a] fiduciary duty applies to any of [the respondents]." The district court concluded that because appellants had not established a duty to disclose, they could not show that respondents had made a misrepresentation and could not prove their intentional-misrepresentation claim. This appeal follows.

## ISSUES

I. Did the district court err by granting respondents' motion for summary judgment under the statute of limitations?

II. Did the district court err by granting respondents' motion for summary judgment on the merits?

## ANALYSIS

Appellants challenge the district court's grant of summary judgment in respondents' favor. "On an appeal from summary judgment, [an appellate court] ask[s] two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). "A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). "[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely

creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn.1997). "[T]he party resisting summary judgment must do more than rest on mere averments." *Id.* Reviewing courts apply a de novo standard of review to a grant of summary judgment and view the evidence in the light most favorable to the non-moving party. *Osborne v. Twin Town Bowl, Inc.,* 749 N.W.2d 367, 371 (Minn.2008).

## I.

 Minnesota law provides a six-year statute of limitations "for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud[.]" Minn.Stat. § 541.05, subd. 1(6). "[T]he burden is on the plaintiff to allege and prove that he [or she] did not discover the facts constituting the fraud until within six years before the commencement of the action." *Blegen v. Monarch Life Ins. Co.,* 365 N.W.2d 356, 357 (Minn.App.1985) (quotation omitted). "The facts constituting the fraud are deemed to have been discovered when, with reasonable diligence they could and ought to have been discovered." *Id.* (quotation omitted). " 'A plaintiff must exercise reasonable diligence when he or she has notice of a possible cause of action for fraud.' " *Klehr v. A.O. Smith Corp.,* 87 F.3d 231, 235 (8th Cir.1996) (quoting *Buller v. A.O. Smith Harvestore Prods., Inc.,* 518 N.W.2d 537, 542 (Minn.1994)). "A plaintiff's due diligence in the statute of limitations context is ordinarily a question of fact." *Id.* "Where the evidence leaves no room for reasonable minds to differ on

the issue, however, the court may properly resolve the issue as a matter of law." *Id.*

■ The district court reasoned that if appellants had timely initiated their non-fraud claims, they would have acquired the facts constituting the alleged fraud through discovery related to the non-fraud claims. The court essentially concluded that, in this case, reasonable diligence required the filing of a related lawsuit.

■ We are aware of no legal authority supporting the proposition that "reasonable diligence" requires a party to file a lawsuit and conduct discovery. And the district court's reasoning is at odds with caselaw. "[T]he requirement of reasonable diligence imposes an affirmative duty to investigate upon a party who is aware of facts that might constitute a possible cause of action for fraud." *Klehr,* 87 F.3d at 237 (citing *Buller,* 518 N.W.2d at 542) (other citation omitted). But a party is under no duty to investigate a fraud it has no reason to suspect. *Hydra–Mac, Inc. v. Onan Corp.,* 430 N.W.2d 846, 854 (Minn.App. 1988), *aff'd in part, rev'd in part on other grounds,* 450 N.W.2d 913 (Minn.1990). Thus, the proper inquiry is whether and when appellants had reason to suspect fraud on respondents' part, which suspicion would trigger appellants' duty to investigate the claim. If appellants had no reason to suspect fraud and therefore no duty to investigate, it does not matter that the facts supporting appellants' fraud claim could have been discovered through formal discovery in a lawsuit based on their non-fraud claims. *See Klehr,* 87 F.3d at 237.

Appellants knew that they had been abused, who had abused them, and the associated parish and diocese. But this information alone does not resolve all genuine issues of material fact regarding whether appellants had notice of a potential cause of action for fraud against the parish or the diocese. There is a factual dispute regarding whether appellants were aware of the alleged misrepresentation—that respondents failed to disclose Father Roney's abuse history—and thereby on notice of a potential fraud claim, before 2003, when respondents publicly disclosed that Father Roney had sexually abused children in the past.

Respondents counter that appellants should have been on notice of a potential fraud claim before 2003, citing the acknowledgement of appellants' own expert that 1984 was the "high point" of public awareness regarding sexual abuse by Catholic clergy in the United States. While this information might suggest that appellants should have recognized the possibility of a fraud claim in 1984, it merely raises a factual issue as to which reasonable minds could differ. Similarly, the district court's conclusion, that because Jane Doe 43G attended a religious conference and listened to a presentation about clergy sexual abuse in 1993, she "could" have had reason to suspect that the alleged sexual abuse by Father Roney might be associated with a greater pattern of clergy abuse within the church, does not resolve the statute-of-limitations issue as a matter of law. Whether this conference provided sufficient notice of a potential fraud claim merely raises a question of fact.

On summary judgment review, we must view the facts in the light most favorable to appellants; they claim that they did not know that the parishes or diocese knew of the abuse until the public announcement in 2003. And a plaintiff's reasonable diligence in the statute-of-limitations context is normally a question of fact. *Id.* at 235. Because the evidence leaves room for reasonable minds to differ on the issue of whether appellants were on notice of their potential fraud claims and whether they

exercised reasonable diligence to discover the facts constituting the fraud, the district court erred by granting summary judgment based on the statute of limitations. *See id.*

However, our conclusion regarding the district court's resolution of the statute-of-limitations issue does not end our analysis. Because summary judgment will be affirmed if it can be sustained on any ground, *Winkler v. Magnuson,* 539 N.W.2d 821, 828 (Minn.App.1995), *review denied* (Minn. Feb. 13, 1996), we next consider whether the district court properly granted summary judgment on the merits.

## II.

■■ To establish intentional misrepresentation, a plaintiff must demonstrate:

[T]hat [the] defendant (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation [and] (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

*M.H. v. Caritas Family Servs.,* 488 N.W.2d 282, 289 (Minn.1992). "A misrepresentation may be made by an affirmative statement that is itself false or by concealing or not disclosing certain facts that render facts disclosed misleading." *Heidbreder v. Carton,* 645 N.W.2d 355, 367 (Minn.2002).

■■ The district court concluded that there had been no misrepresentation by the parishes or the diocese and thus, one of the essential elements of appellants' intentional-misrepresentation claim could not be established. Respondents argue that we should affirm summary judgment on this ground, because appellants offered no evidence of a misrepresentation. "[S]ummary judgment on a claim is mandatory against a party who fails to establish an essential element of that claim, if that party has the burden of proof, because this failure renders all other facts immaterial." *Lloyd v. In Home Health, Inc.,* 523 N.W.2d 2, 3 (Minn.App.1994).

Appellants argue that respondents' act of allowing Father Roney to continue to serve as pastor at St. Mary's parish and to have unsupervised access to minor children at the parish amounted to an affirmative representation that Father Roney was safe to be around children. Respondents classify this alleged misrepresentation as a failure to disclose Father Roney's prior sexual abuse. Appellants counter that this is an incorrect characterization of their claim and attempt to draw a distinction between respondents' failure to disclose Father Roney's past abuse and respondents' conduct that "affirmatively represented to [a]ppellants that [Father] Roney was safe to work around children" when respondents knew such contact was not safe.

We agree that respondents' act of allowing Father Roney access to children may have caused appellants and their families to believe that he was safe to be around children. But this understanding, and any resulting misrepresentation, was caused by the underlying failure to disclose his history of sexual abuse. Respondents' conduct—allowing Father Roney to have access to children, while simultaneously failing to disclose his abuse history—created the alleged misrepresentation. Appellants' own arguments demonstrate that the "affirmative act" of holding Father Roney out as safe is, in essence, the same thing as respondents' nondisclosure. For example, appellants argue that "[b]ecause

of [Sister M.'s] *silence*, St. Mary's parishioners continued to believe that Roney was a holy man, chaste and celibate, and fit to have unsupervised access to their children"; "Roney's propensity to sexually abuse children constituted a present fact which was *hidden* from [appellants]"; and "by *choosing not to tell* anyone, [Sister M.] was making a representation about Roney that was false." Yet, appellants urge us to ignore the nondisclosure that underlies the alleged misrepresentation, in their attempt to avoid the rule that "[n]ondisclosure does not constitute fraud absent a legal or equitable obligation to communicate facts to a particular person [who is] is entitled to the information." *L & H Airco, Inc. v. Rapistan Corp.*, 446 N.W.2d 372, 380 (Minn.1989) (quotation omitted).

 "Before nondisclosure may constitute fraud ... there must be a suppression of facts which one party is under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him." *Richfield Bank & Trust Co. v. Sjogren*, 309 Minn. 362, 365, 244 N.W.2d 648, 650 (1976). "A duty to disclose facts may exist under certain circumstances, such as when a confidential or fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed, which would otherwise be misleading." *L & H Airco*, 446 N.W.2d at 380. "[S]ilence does not constitute fraud in the absence of a duty to speak." *Berreman v. W. Publ'g Co.*, 615 N.W.2d 362, 375 (Minn.App.2000), *review denied* (Minn. Sept. 26, 2000). But appellants do not assert that respondents had a duty to disclose Father Roney's sexual-abuse history. Instead, appellants cite *John Doe 1 v. Archdiocese of Milwaukee*, 303 Wis.2d 34, 734 N.W.2d 827 (2007), as authority for the proposition that respondents' act of holding Father Roney out as

safe is an actionable misrepresentation, without regard to the underlying nondisclosure.

In *John Doe 1*, three plaintiffs (the Doe plaintiffs) who were allegedly abused by a priest brought claims for negligent supervision and intentional misrepresentation. 734 N.W.2d at 831. The Doe plaintiffs alleged that they were sexually abused by the priest after he had been criminally convicted of sexually molesting another child, and that the archdiocese knew of this conviction. *Id.* Another plaintiff brought suit against the archdiocese alleging that he had been molested by a different priest and that the archdiocese knew that this priest had a history of sexual abuse. *Id.* at 832. A Wisconsin trial court dismissed the claims for failure to state a claim upon which relief could be granted, finding that the claims were barred by the statute of limitations. *Id.* The Wisconsin Court of Appeals affirmed the dismissal. *Id.* at 832–33.

On review, the Wisconsin Supreme Court explained that the case involved allegations of two types of fraud: (1) affirmative representations that the priests did not have a history of molesting children and that they were not a danger to children and (2) failures to disclose the material fact that each priest had a history of sexually abusing children. *Id.* at 839. The court explained that the alleged affirmative representations consisted of letters to parishioners from the archdiocese responding in a reaffirming manner to parishioners' positive comments about the priests and "the [a]rchdiocese's act of placing priests in parishes with unsupervised access to children [indicating] that the [a]rchdiocese did not know that the priests had a history of sexually molesting children and that the [a]rchdiocese did not know the priests were a danger to children." *Id.* at 840. Thus, the court classi-

fied the archdiocese's failure to disclose the priests' histories of sexual abuse as a type of fraud separate and distinct from any affirmative representation that resulted from placing the priests in parishes with unsupervised access to children. *Id.* at 839.

The court noted that "acts can be the equivalent of a representation," for purposes of an intentional-misrepresentation claim, and that "[a]ny conduct capable of being turned into a statement of fact is a representation. There is no distinction between misrepresentations effected by words and misrepresentations effected by other acts." *Id.* at 840–41 (quotation omitted). With regard to the alleged misrepresentation that resulted from the archdiocese's act of placing the priests in parishes with unsupervised access to children, the court concluded that "[b]ecause acts can constitute representations of fact, based solely on the allegations in the complaint before us, we cannot conclude that such acts as are described in the complaints are not sufficient to constitute an affirmative representation."[2] *Id.* at 841.

We are not persuaded by this approach. While the Wisconsin Supreme Court ostensibly recognized that "[i]n general, silence or a failure to disclose a fact is not an intentional misrepresentation unless the person has a duty to disclose," the court's decision to treat the act of placing priests in parishes with unsupervised access to children as an affirmative representation, separate and distinct from the underlying nondisclosure, appears to ignore this rule of law. *Id.* at 842. The court even seemed to acknowledge the lack of distinction between the two acts by stating: "If there is a duty to disclose a fact, failure to disclose that fact is treated in the law as *equivalent* to a representation of the nonexistence of the fact." *Id.* (emphasis added) (quotation omitted). It was the act of holding the priests out as safe without disclosing their abuse histories that resulted in a misrepresentation by conduct. By ignoring the nondisclosure aspect of the conduct, the court appears to have significantly broadened the type of acts that may constitute a fraudulent misrepresentation.

Minnesota appellate courts have not considered or adopted this approach. To the contrary, we have consistently stated that "[a] misrepresentation may be made either (1) by an affirmative statement that is itself false or (2) by concealing or not disclosing certain facts that render the facts that are disclosed misleading." *Caritas,* 488 N.W.2d at 289; *see also Heidbreder,* 645 N.W.2d at 367 (same); *Gully v. Gully,* 599 N.W.2d 814, 821 (Minn.1999) (same); *Dakota Bank v. Eiesland,* 645 N.W.2d 177, 184 (Minn.App.2002) (same). And while our caselaw contains examples of cases in which an alleged misrepresentation is based on conduct instead of an oral or written communication, we have not found a case involving nondisclosure that does not analyze whether there was a duty to disclose. For example, in *Berreman,* West Publishing did not disclose to a retiring employee that it was engaged in merger discussions. 615 N.W.2d at 375. In effect, West held itself out as a corporation that intended to remain privately held,

---

**2.** This conclusion is arguably dictum. The trial court dismissed the plaintiffs' claims under the statute of limitations. *John Doe,* 734 N.W.2d at 832. The court of appeals affirmed the dismissal, concluding that the claims were barred by the statute of limitations. *Id.* The Wisconsin Supreme Court stated that the issue on appeal was "whether the plaintiffs' claims for negligent supervision and fraud are barred by the applicable statute of limitations." *Id.* at 833. The opinion does not indicate that any of the parties asked the court to consider and determine whether the intentional-misrepresentation claims were sufficiently pleaded, as opposed to untimely.

while the company simultaneously explored other options. This nondisclosure allegedly cost the plaintiff-employee millions of dollars because he sold his stock back to West for considerably less than what Thomson, the ultimate purchaser, paid for West's stock. *Id.* at 367. We analyzed the alleged misrepresentation as a nondisclosure and concluded that, because there was no duty to disclose, summary judgment was appropriate. *Id.* at 375.

Moreover, our supreme court has rejected a claimant's attempt to refashion a nondisclosure as an affirmative representation. *See L & H Airco*, 446 N.W.2d at 380–81. In *L & H Airco*, a legal dispute arose from an alleged contractual breach between a company and its manufacturer's representative. *Id.* at 374. The company opted for arbitration. *Id.* One of the three selected arbitrators had a prior relationship with the company and went on a fishing trip with the president of the company, weeks prior to the scheduled arbitration proceeding. *Id.* Before the trip, the president allegedly consulted the company's attorney, who stated that the trip was not inappropriate so long as the arbitration proceedings were not discussed. *Id.*

During the course of the arbitration proceeding, the company sought to add additional defendants, including its president. *Id.* at 375. When the arbitration panel requested that the parties stipulate to the naming of additional defendants, the representative agreed, later asserting that the agreement had been predicated on an express oral condition that none of the additional defendants had any social or business contacts with the arbitrators. *Id.* No disclosure had been made of the fishing trip or any other prior social or business contacts. *Id.* The representative subsequently brought claims for fraud, negligent misrepresentation, and breach of the cove-

nants of good faith and fair dealing against several defendants, including the company's attorney, based on their failure to disclose the existing relationships. *Id.* The supreme court addressed the fraud claim against the company's attorney as follows:

> In their amended complaint, [the representative] alleged that [the attorney] knew that [the company] and some of its officers had business and social contacts with the arbitrator [ ] prior to the arbitration hearing, including the fishing trip which allegedly occurred one month before the hearing, and that [the attorney] "intentionally concealed" his knowledge of those contacts and "allowed the arbitration to continue without disclosing the true facts, and subsequently made a motion with the court to confirm the arbitration award." This particular theory of fraud is *too broadly* stated. After a careful examination of the complaint, taking the facts alleged by [the representative] as being true, it must be concluded that the fraud alleged by the complaint is based *solely* on nondisclosure.

*Id.* at 379 (emphasis added). Absent evidence that the attorney "affirmatively misrepresented that his client had no prior contact" with the arbitrator or that the attorney "actively took steps to conceal the facts of the prior relationships," the court concluded that "if [the attorney] is liable, it is for failing to disclose his alleged knowledge of the prior contacts." *Id.* at 379–80.

▇▇▇ The supreme court also clarified that misrepresentations based on affirmative acts and misrepresentations based solely on nondisclosure are separate and distinct:

> An attorney who makes affirmative misrepresentations to an adversary, or conspires with his or her client, or takes other active steps to conceal the client's

fraud from the adversary may be liable for fraud. However, merely failing to disclose a client's fraud to the adversary will not make the attorney liable, absent a duty on the attorney to make such a disclosure.

*Id.* at 380 (citations omitted). In this case, there is no evidence that respondents made affirmative misrepresentations separate and distinct from their nondisclosure or took active steps to conceal the abuse. Like the claimant in *L & H*, appellants have too broadly stated their fraud theory.

Respondents argue that ignoring the nondisclosure that underlies the alleged misrepresentation in this case, and the associated requirement of a duty to disclose, would "greatly expand the scope of potential liability for fraud claims." We agree. And we are mindful that "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). It is not the function of this court to establish new causes of action, even when such actions appear to have merit. *Stubbs v. N. Mem'l Med. Ctr.*, 448 N.W.2d 78, 80–81 (Minn.App.1989), *review denied* (Minn. Jan. 12, 1990). Thus, while we are sympathetic to victims of sexual abuse and recognize that appellants' claim involves allegations of inexcusable child abuse perpetrated by an adult in a position of trust, we are bound to follow the existing law and cannot extend it to accommodate the intentional-misrepresentation claim in this case.

We therefore decline to recognize appellants' broadly stated fraud theory and instead address the alleged misrepresentation as a nondisclosure. Because nondisclosure does not give rise to a fraud claim unless there is "a legal or equitable obligation to communicate facts to a partic-ular person and that person is entitled to the information," *L & H Airco*, 446 N.W.2d at 380 (quotation omitted), and appellants did not allege the existence of a duty to disclose, we affirm the district court's award of summary judgment on the ground that appellants failed to establish an essential element of their intentional-misrepresentation claim. Since we affirm on this ground, we do not address respondents' alternative arguments in support of summary judgment.

## DECISION

Because there are genuine issues of material fact regarding when appellants were put on notice of their potential fraud claim and whether they exercised reasonable diligence to discover the facts constituting fraud, the district court erred by granting summary judgment under the statute of limitations. But because appellants' intentional-misrepresentation claim is based solely on nondisclosure and appellants failed to allege or establish that respondents had a duty to disclose, we affirm the grant of summary judgment on the merits.

**Affirmed.**