John DOE 76C, Appellant,

v.

**ARCHDIOCESE OF ST. PAUL & MINNEAPOLIS, Respondent,**

**Diocese of Winona, Respondent.**

No. A10–1951.

Court of Appeals of Minnesota.

June 27, 2011.

Jeffrey R. Anderson, Patrick W. Noaker, Michael G. Finnegan, Jeff Anderson & Associates P.A., St. Paul, MN, for appellant.

Thomas B. Wieser, Jennifer R. Larimore, Meier, Kennedy & Quinn Chtd., St. Paul, MN, for respondent Archdiocese of St. Paul and Minneapolis.

Anna Restovich Braun, Bruce K. Piotrowski, Thomas R. Braun, George F. Restovich & Associates, Rochester, MN, for respondent Diocese of Winona.

Bruce Jones, Faegre & Benson LLP, Minneapolis, MN, for amicus curiae Minnesota Religious Council.

Considered and decided by JOHNSON, Chief Judge; SCHELLHAS, Judge; and HARTEN, Judge.*

## OPINION

SCHELLHAS, Judge.

Appellant challenges the district court's summary-judgment ruling that his tort and fraud claims arising out of alleged childhood sexual abuse are time-barred. Because we conclude that there are genuine issues of material fact relating to (1) whether appellant had a disability that

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

tolled the tort limitations period and (2) when appellant's fraud claims accrued, we reverse and remand.

## FACTS

On April 24 and May 9, 2006, appellant John Doe 76C commenced suit against respondents Archdiocese of St. Paul and Minneapolis and Diocese of Winona, alleging that a priest, whom respondents supervised and controlled, sexually abused him between 1980 and 1982, when he was approximately 13–15 years old. The complaint alleges that respondents knew that the priest had a history of sexual abuse and includes counts of negligence, negligent supervision, negligent retention, vicarious liability, and fraud. The complaint alleges that, as a direct result of the sexual abuse, appellant suffered and will continue to suffer physical, emotional, psychological, and economic damages. The complaint also alleges that appellant did not know or have reason to know about the abuse until July 2002, because he "suffered a traumatic amnesia, or memory repression, of the sexual abuse when he was a child," thus tolling the tort statute of limitations. As the district court explained:

> Repressed and recovered memory is the theory that people who experience traumatic events may "repress" memories of [the] events in their entirety, making them unable to remember the event[s]. Years later these repressed memories are then recovered in unchanged form. This phenomenon is often referred to by a variety of names[,] including[ ] "repressed memory," "recovered memory," "traumatic amnesia," "dissociative amnesia," or "traumatic dissociative amnesia" [;] however, the underlying theory is the same.

The parties agree that the statute of limitations applicable to appellant's tort claims is Minn.Stat. § 541.073 (2010),[1] which provides that an action for damages based on personal injury caused by sexual abuse or negligently permitting sexual abuse "must be commenced within six years of the time the plaintiff knew or had reason to know that the injury was caused by the sexual abuse." Because "concepts of sexual abuse and injury within the meaning of this statute are essentially one and the same, not separable[,] as a matter of law one is 'injured' if one is sexually abused." *Blackowiak v. Kemp*, 546 N.W.2d 1, 3 (Minn.1996). The "ultimate question" is simply "the time at which the complainant knew or should have known that he/she was sexually abused," subject to "the objective, reasonable person standard." *Id.* The limitations period for tort claims "begins to run once a victim is abused unless there is some legal disability, such as the victim's age, or mental disability, *such as repressed memory of the abuse,* which would make a reasonable person incapable of recognizing or understanding that he or she had been sexually abused." *W.J.L. v. Bugge*, 573 N.W.2d 677, 681 (Minn.1998) (emphasis added).

Respondents moved the district court for a *Frye–Mack* hearing to determine the admissibility of appellant's proffered expert testimony in support of his repressed-memory theory. Over appellant's objection, the court held the hearing. Appellant called two expert witnesses to support his argument that repressed-memory theory meets the *Frye–Mack* test; respondents called three experts, who, as described by the court in its order, generally testified that "certain scientists question whether" memory repression "is distinct from ordi-

1. This statute of limitations, first enacted in 1989, applies retroactively. 1989 Minn. Laws ch. 190, § 2, at 486–87, § 6, at 488; *Lickteig v. Kolar*, 782 N.W.2d 810, 819 (Minn.2010).

nary forgetting and other psychological processes."

Following the hearing, the district court issued findings of fact and concluded that appellant "failed to meet his burden of proof under the *Frye–Mack* standard of showing that the concept of repressed and recovered memory" is (1) "generally accepted in the relevant scientific community," and (2) "reliable and trustworthy based on well-recognized scientific principles because of the significant methodological flaws in the studies presented by [appellant] in support of that theory and the lack of any test to show reliability." Accordingly, the court granted respondent's motion to exclude appellant's proffered expert testimony on the repressed-memory theory.

Reasoning that without the expert testimony appellant could not show that he had a disability that would prevent a reasonable person from recognizing or understanding that he had been abused, the district court ruled that the six-year limitations period on appellant's tort claims began to run on appellant's 18th birthday, June 11, 1985, and expired on June 11, 1991. The court therefore concluded that the tort claims were time-barred and granted summary judgment to respondents. The court also granted respondents summary judgment on appellant's fraud claims, reasoning that, with reasonable diligence appellant could have discovered the alleged fraud in the 1980s, and that the six-year statute of limitations for fraud under Minn.Stat. § 541.05, subd. 1(6) (2010), had therefore expired.

This appeal follows.

## ISSUES

I. Did the district court err by granting summary judgment to respondents on appellant's tort claims?

II. Did the district court err by granting summary judgment to respondents on appellant's fraud claims?

## ANALYSIS

Appellant challenges the district court's summary judgment in favor of respondents on all his claims. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, this court reviews de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002).

### I. Tort Claims

"Generally, the date on which a plaintiff knows or has reason to know that he or she was sexually abused involves a factual determination and is, therefore, a question for the trier of fact." *Bugge*, 573 N.W.2d at 680. "The burden is on the moving party to show the absence of an issue of material fact, and the reviewing court must view the evidence in the light most favorable to the nonmoving party." *Id.* In this case, as in *Bugge*, upon respondents' motions for summary judgment, the district court was faced with resolving "whether there is a genuine issue of material fact for trial as to whether [appellant] knew or had reason to know more than six years prior to commencing this lawsuit that the alleged abuse had occurred." *Id.*

■ The district court granted summary judgment to respondents on appellant's tort claims because it concluded that appellant's proffered expert testimony on

the repressed-memory theory, which was necessary for appellant to prove that he had a mental disability that tolled the limitations period, was inadmissible under the *Frye–Mack* standard. Under *Frye–Mack*, the proponent of scientific expert testimony generally "must establish the proper foundation for admissibility by showing that the scientific theory is generally accepted in the applicable medical or scientific community, and that the principles and methodology used are reliable." *McDonough v. Allina Health Sys.*, 685 N.W.2d 688, 694 (Minn.App.2004) (citing *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir. 1923); *State v. Mack*, 292 N.W.2d 764, 768 (Minn.1980)). But the *Frye–Mack* standard is not applicable to all questions of admissibility of scientific evidence. *See State v. MacLennan*, 702 N.W.2d 219, 230 (Minn.2005) (stating that "while we have previously applied *Frye–Mack* to evidence falling into the general field of psychology, we have not applied *Frye–Mack* in cases addressing the admissibility of 'syndrome' evidence offered to explain behavior." (footnote omitted)); *see also State v. Hennum*, 441 N.W.2d 793, 797–99 (Minn.1989) (applying rule 702 instead of *Frye–Mack* standard in concluding that expert testimony regarding battered-woman syndrome was admissible in the context of defendant's claim of self-defense because it would be helpful to the jury by explaining "a phenomenon not within the understanding of an ordinary lay person").

In *MacLennan*, the supreme court addressed battered-child syndrome and recognized "a fundamental difference between techniques and procedures based on chemical, biological, or other physical sciences as contrasted with theories and assumptions that are based on the behavioral sciences." 702 N.W.2d at 231 (quotation omitted). The court noted that, while "the *Frye* test is appropriate when the experimental, mechanical or theoretical nature of the scientific evidence has the potential to mislead lay jurors awed by an aura of mystic infallibility surrounding scientific techniques, experts and the fancy devices employed," the test is not applicable "in cases where the jury is in a position to weigh the probative value of the testimony without abandoning common sense and sacrificing independent judgment to the expert's assertions based on his special skill or knowledge." *Id.* at 232 (quotation omitted). "[W]here understanding of the method is accessible to the jury[ ] and not dependent on familiarity with highly technical or obscure scientific theories," cross-examination and rebuttal evidence are effective to challenge an expert's conclusions. *Id.* (quotation omitted). The *MacLennan* court concluded that "expert testimony on syndromes, unlike DNA evidence or other physical science, is not the type of evidence that the analytic framework established by *Frye–Mack* was designed to address." *Id.* at 233.

■ The supreme court's reasoning in *MacLennan* persuades us that *Frye–Mack* is not the appropriate analytical framework for evaluating the admissibility of the proffered expert testimony on the repressed-memory theory in this case. Unlike DNA evidence, for example, in this case, no "technique[ ][or] procedure[ ] based on chemical, biological, or other physical sciences" exists for evaluation by the scientific community. *Id.* at 231. Instead, the community is left to disagree about a social or psychological theory of behavior that cannot be subjected to a definitive scientific test. No "method" of testing the condition of repressed memory exists for general acceptance or non-acceptance by the scientific community. Similarly, no "scientific techniques" or "fancy devices" exist for presentation in court

that could "mislead lay jurors awed by an aura of mystic infallibility." *Id.*

Because we conclude that the *Frye–Mack* standard does not govern the admissibility of expert testimony about the repressed-memory theory in an action based on claims of child sexual abuse and that the district court erred by applying that standard, we reverse the district court's determination that appellant's proffered expert testimony is inadmissible under the *Frye–Mack* standard and remand for the district court to determine admissibility of the proffered expert testimony under the evidentiary standard set forth in Minn. R. Evid. 702. *See id.* at 233 (concluding that courts should use Minn. R. Evid. 702 to discern whether expert testimony on syndromes would be helpful to the jury); *see also State v. Obeta,* 796 N.W.2d 282, 293–94 (Minn.2011) (concluding that "the mental and physical reactions of an adult sexual-assault victim may lie outside the common understanding of an average juror[,]" reversing "the district court's determination that the State's proffered expert testimony is inadmissible as a matter of law[,]" and remanding to the district court "the specific application of Rule 702 and the subsequent question of admissibility to the sound discretion of the district court"); *Hennum,* 441 N.W.2d at 798 (relying on rule 702 and concluding that expert testimony on battered-woman syndrome "would help to explain a phenomenon not within the understanding of an ordinary lay person").

On remand, the district court should judge the admissibility of appellant's proffered expert testimony under the helpfulness requirement of Minn. R. Evid. 702. *See MacLennan,* 702 N.W.2d at 233 (stating that courts should use rule 702's helpfulness requirement, rather than *Frye–Mack,* to determine whether expert testimony on battered-child syndrome would be

helpful to the jury). Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue" to be admissible. Minn. R. Evid. 702. "If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject . . ., then the testimony does not meet the helpfulness test." *MacLennan,* 702 N.W.2d at 233 (quotation omitted).

Here, appellant wishes to present psychological explanations for whether and why victims of sexual abuse might repress and later recover memories in connection with his claim that he suffered a mental disability, i.e., repressed memory, that tolled the running of the statute of limitations. As in *MacLennan,* the record before us does not suggest that any of appellant's proffered expert testimony pertains to appellant specifically; instead, appellant seeks to offer the expert testimony only to explain the repressed-memory theory generally for the purpose of helping the factfinder to understand his testimony about his repressed memories.

In addressing whether appellant's proffered expert testimony meets the helpfulness requirement under rule 702, courts should note the following:

The underlying rationale for the limitations period contained in Minn.Stat. § 541.073 is that many sexual abuse victims, especially young children, are psychologically and emotionally unable to recognize that they have been abused. As a result, these victims are often incapable of bringing their claims within the limitations period of Minn.Stat. §§ 541.07 [2010] and 541.15(a)(1) [2010].

*Bugge,* 573 N.W.2d at 680. And we note the Minnesota Supreme Court's recognition in *Bugge* that "[t]he Minnesota legisla-

ture, in drafting the delayed discovery statute, acknowledged that repressed memory, denial, shame, and other similar factors may prevent sexual abuse victims from coming forward with actions against their alleged abusers in a timely fashion." *Id.* at 680 n. 5.

The district court should also be guided by our supreme court's recent decision in *Obeta.* In that case, addressing the admissibility of expert testimony to assist the common understanding of an average juror about the mental and physical reaction of an adult sexual-assault victim, the court noted the conclusions by Minnesota courts that expert testimony of typical behaviors by battered women, battered children, and child- and adolescent-victims of criminal sexual conduct may be helpful to the jury in evaluating the evidence. *See Obeta,* 796 N.W.2d at 294. As with expert testimony about typical behaviors by battered women, battered children, and child and adolescent victims of criminal sexual conduct, appellant's proffered expert testimony may assist the jury to understand the distinction between repressed memory and the ordinary process of forgetting, which may be beyond the understanding of a layperson. The reaction of a child to sexual abuse, under the circumstances alleged in this case, may be outside the common understanding of an average juror. Armed with the additional understanding provided through expert testimony, the jury may be able to determine whether appellant suffered from repressed memory of his abuse, tolling the limitations period under Minn. Stat. § 541.073. *See W.J.L.,* 573 N.W.2d at 681 (counting repressed memory among disabilities that would toll the section 541.073 limitations period).

But a ruling by the district court that appellant's proffered expert testimony is admissible should not give appellant's experts free rein. As in *MacLennan,* the experts' testimony should be limited to a description of memory repression and the characteristics that are present in an individual suffering from repressed memory. *See* 702 N.W.2d at 234. If the experts are allowed to testify, they may not testify to the "ultimate fact" of whether appellant suffered from repressed memory; that question is reserved for the jury. *See id.* This limitation on the expert testimony "preserves our interest in allowing the jury to serve as fact finders ... and does not allow that role to be usurped by experts." *Id.* And respondents can attempt to rebut such expert testimony through cross-examination and the presentation of their own expert testimony.

The district court granted summary judgment after erroneously applying the *Frye–Mack* analysis to exclude appellant's expert testimony regarding the repressed-memory theory. If admissible, that testimony would create a genuine issue of material fact as to whether appellant had a disability and, in turn, when he knew or had reason to know that he had been abused. Accordingly, we reverse the district court's summary judgment in favor of respondents on appellant's tort claims, remand to the district court for the application of rule 702, and leave to the court's sound discretion the question of admissibility of appellant's proffered expert testimony on the repressed-memory theory.

## II. Fraud Claims

The district court granted summary judgment to respondents on appellant's fraud claims, concluding that the fraud claims are time-barred. Minnesota law provides a six-year statute of limitations "for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Minn.Stat. § 541.05,

subd. 1(6). "The burden is on the plaintiff to allege and prove that he or she did not discover the facts constituting the fraud until within six years before the commencement of the action." *Jane Doe 43C v. Diocese of New Ulm,* 787 N.W.2d 680, 684 (Minn.App.2010) (quotation omitted). "The facts constituting the fraud are deemed to have been discovered when, with reasonable diligence[,] they could and ought to have been discovered." *Id.* (quotation omitted). "A plaintiff must exercise reasonable diligence when he or she has notice of a possible cause of action for fraud." *Id.* (quotation omitted). "A plaintiff's due diligence in the statute of limitations context is ordinarily a question of fact." *Id.* (quotation omitted). "Where the evidence leaves no room for reasonable minds to differ on the issue, however, the court may properly resolve the issue as a matter of law." *Id.* at 684–85 (quotation omitted).

 To establish a fraud claim, a plaintiff must prove:

> That the defendant (1) made a representation (2) that was false (3) having to do with a past or present fact (4) that is material (5) and susceptible of knowledge (6) that the representor knows to be false or is asserted without knowing whether the fact is true or false (7) with the intent to induce the other person to act (8) and the person in fact is induced to act (9) in reliance on the representation and (10) that the plaintiff suffered damages (11) attributable to the misrepresentation.

*Id.* at 686 (quotation omitted). "A misrepresentation may be made by an affirmative statement that is itself false or by concealing or not disclosing certain facts that render facts disclosed misleading." *Id.* (quoting *Heidbreder v. Carton,* 645 N.W.2d 355, 367 (Minn.2002)) (quotation marks omitted). But where a fraud claim is based on nondisclosure, the plaintiff must establish that the defendant owed a duty to disclose. *Id.* at 690.

Appellant asserts two fraud claims in his complaint—one for fraudulent concealment and one for intentional nondisclosure. Both claims are based on allegations that, sometime within the six years prior to the commencement of his suit, appellant first became aware that respondents had: (1) misrepresented that the accused priest had no history of sexual abuse, or intentionally failed to disclose that he had a history of sexual abuse; (2) with the intent to induce appellant to rely on this misrepresentation; (3) appellant did so rely; and (4) appellant suffered damages as a result. The district court concluded that appellant's fraud claims accrued in the 1980s, reasoning that appellant was aware or reasonably should have been aware of all of these facts at that time. The court therefore concluded that appellant's fraud claims are time-barred because the limitations period began to run when appellant's claims accrued.

 We disagree with the district court's conclusion that appellant's fraud claims accrued in the 1980s. While we agree with the court that sometime in the 1980s appellant became aware that the priest had been *accused* of sexually abusing *other* children, we disagree that those facts necessarily put appellant on notice that *he* had a cause of action for fraud. Appellant testified that that he did not become aware that *he* had been abused until 2001 or 2002. At the very least, this evidence creates a genuine issue of material fact as to when appellant discovered the facts constituting the alleged fraud. If, indeed, appellant did not become aware that he had been abused until 2001 or 2002, he could not have known that he had a viable fraud claim until then. *See id.* at 685 ("[A] party is under no duty to investi-

gate a fraud it has no reason to suspect."). If the limitations period for appellant's fraud claims did not begin to run until 2001 or 2002, his 2006 summons and complaint were timely.

Because we conclude that genuine issues of material fact exist about when appellant was on notice of a potential fraud claim, the district court erred by concluding that appellant's fraud claims are time-barred and by granting summary judgment on the claims to respondents.

## DECISION

Because the *Frye–Mack* standard does not govern the admissibility of expert testimony about the repressed-memory theory in an action based on claims of child sexual abuse, the district court erred by excluding expert testimony on the repressed-memory theory under that standard. The district court further erred by granting summary judgment to respondents on the ground that appellant's claims are time-barred.

**Reversed and remanded.**